Kelly, J.
This is a dispute over money claimed by cross-plaintiff Millen Roofing Company from the cross-defendant homeowners, Robert and Patricia Stokes, related to the parties’ residential construction contract. We hold that (1) Millen’s construction lien was properly extinguished because it was invalid and unenforceable, and (2) MCL 339.2412 barred Millen, an unlicensed contractor, from seeking compensation from plaintiffs under its contract with them for the installation of a slate roof.
I
Millen Roofing Company, a roofer unlicensed in Michigan, placed a lien on the title to the Stokes’ home after they refused to pay the amount it claimed was due. The Stokes sued to clear title, alleging that the lien was invalid and that the residential builders *663 act[1] barred Millen from recovery under the contract. Millen counterclaimed for breach of contract, quantum meruit, and foreclosure of the construction lien.
In response to various motions by the parties, the trial court dismissed the counterclaim and extinguished the construction lien. After Millen submitted an amended counterclaim raising equitable claims, the court determined that Millen was entitled to equitable relief. It held that the Stokes could pay Millen the full amount of the original contract price. If they chose not to do so, Millen could reimburse plaintiffs for payments made and reclaim the slate it had installed on plaintiffs’ roof. Both parties appealed from the trial court’s decision.
The Court of Appeals affirmed, following the precedent of Republic Bank v Modular One LLC, 232 Mich App 444; 591 NW2d 335 (1998). 245 Mich App 44; 627 NW2d 16 (2001). However, the panel disagreed with the holding in Republic and sought the vote of a special panel to resolve the conflict between its view and the holding in Republic. No panel was convened.
Both parties appealed from the Court of Appeals judgment. We granted the Stokes’ application for leave to appeal along with Millen’s cross-appeal of the dismissal of its legal claims. 465 Mich 909 (2001).
II
The residential builders act states:
A person or qualifying officer for a corporation . . . shall not bring or maintain an action in a court of this state for the collection of compensation for the performance of an *664 act or contract for which a license is required by this article without alleging and proving that the person was licensed under this article dining the performance of the act or contract. [MCL 339.2412(1).][2]
Under the statute, a builder may not bring an action for collection of compensation unless it can prove that it possesses the license “required by this article.”
Millen argues that the only claims barred are those arising from work for which “a license is required by this article.” It asserts that the “article” to which the statute refers is article 24 of the Occupational Code. MCL 339.2401 et seq. Article 24 contains language that describes the scope of a builder’s license, application procedure, qualifications, and process for suspension of a license. It also contains procedures for complaints against licensees.
Millen asserts that no explicit requirement of a license is found in article 24. Instead, it contends, the express prohibition on unlicensed activity is in article 6 of the Occupational Code. MCL 339.601(1). Therefore, Millen insists that its claims are not barred because, although a license was required, it was not required by article 24.
Millen’s reading of § 2412 would render the statute’s prohibition nugatory. Under its interpretation, no license of any kind would be “required” by article 24, and no claim of any kind would be barred.
In actuality, virtually every section of article 24 specifically refers to a license requirement. Indeed, § 2403 contains several exceptions to the licensure requirement. By implication, if a residential builder *665 does not fit within one of the exceptions there, it must be licensed. When the Occupational Code is read as a whole and its provisions harmonized to fulfill the purpose of the Legislature, it becomes clear that Millen had to be licensed. State Treasurer v Wilson, 423 Mich 138, 145; 377 NW2d 703 (1985). Section 601 specifically refers to occupations regulated under “this act,” the Occupational Code. Residential builders are regulated pursuant to article 24 of the act, unless an exception from that article applies.[3]
Millen argues in the alternative that, even if § 2412 applies, it does not prevent it from recovering the reasonable value of the labor and materials furnished to plaintiffs. It claims that in such an action it would be seeking merely a reimbursement for its materials, and not “compensation” as that word is used in the act.
Because “compensation” is not defined in the act and is not a term of art, we apply a dictionary definition. Random House Webster’s College Dictionary (1995) defines “compensation” as
something given or received as an equivalent for services, debt, loss, injury, etc.; indemnity; reparation; payment.”
*666 Applying that meaning of “compensation,” we find that § 2412 disallows an action for the reasonable value of materials conveyed, because such an action seeks “payment” or “something given or received as an equivalent for [a] debt” or “loss.”
Finally, Millen argues that, even if it is barred from seeking compensation, it should be allowed to recover the value of the materials it supplied. A “supplier” does not require a license under the act.
The fact that Millen was not required to be licensed to supply slate is of no consequence here. In order for the “supplier” portion of this contract to be enforced, it would have to be severed from the illegal portions of the agreement. As the dissent points out, for that to occur, the illegal provision must not be central to the parties’ agreement. See 2 Restatement Contracts, § 603, pp 1119-1120.
[I]f the agreements are interdependent and the parties would not have entered into one in the absence of the other, the contract will be regarded ... as entire and not divisible. [3 Williston, Contracts (3d ed), § 532, p 765.]
Hence, the contract can be bifurcated only if the agreement to install the materials is independent of the agreement to supply them. But, here the agreements were not independent of one another. Applying the test formulated by the dissent, it becomes apparent that the illegal section, which provided for the installation of a slate roof, was central to the parties’ agreement. The parties’ contract required Millen to “furnish and install” the roofing components and did not specify the portion of the total cost attributable solely to materials. If the parties had not intended Millen to install the roof, the Stokes would have had *667 the installer they selected deliver the slate. It follows that the contract is entire and indivisible.
Even if, normally, the contract could be bifurcated, the statute prohibits it. Section 2412 bars a suit for compensation if a license was necessary for performance of “an act or contract.” The statute requires us to look for either an act or a contract requiring a license. It does not make provision for bifurcating building contracts into separate labor and supply components. Accordingly, it is irrelevant that Millen could have supplied slate without a license. Millen’s counterclaim was properly disallowed.[4]
III
Millen further alleges that, notwithstanding its lack of a license, its lien is valid. The Construction Lien Act[5] states:
A contractor shall not have a right to a construction lien upon the interest of any owner or lessee in a residential structure unless the contractor has provided an improvement to the residential structure pursuant to a written contract between the owner or lessee and the contractor and any amendments or additions to the contract also shall be in writing. The contract required by this section shall contain a statement, in type no smaller than that of the body of the contract, setting forth all of the following:
(a) That a residential builder or a residential maintenance and alteration contractor is required to be licensed under article 24 . . .
*668 (b) If the contractor is required to be licensed to provide the contracted improvement, that the contractor is so licensed.
(c) If a license is required, the contractor’s license number. [MCL 570.1114.]
A “contractor” is defined in the statute as “a person who, pursuant to a contract with the owner or lessee of real property, provides an improvement to real property.” MCL 570.1103(5). Millen built a slate roof pursuant to a contract with the owners. Therefore, it is a contractor. Under subsections (b) and (c), it needed to state that it was licensed and provide its license number in order to have a right to a lien.
Millen argues that its lack of a contractor’s license number is not dispositive, because the Construction Lien act contains no penalty for failure to be licensed. It relies on In re Craft[6] a case in which a federal bankruptcy court held that failure to comply with the requirement to furnish a contractor’s license number does not invalidate a lien. Because the statute is remedial, the Craft court was satisfied with the defendant’s “substantial compliance” with the requirements of the act.
We find Craft inapplicable to this case. The contractor there actually possessed a license, but did not properly write the license number on the form for a lien. We will not extend a “substantial compliance” protection to Millen because it lacked a license and could not have completed the form properly under any circumstances. There is nothing in the Construction Lien Act to suggest that the Legislature intended *669 the act to extend “substantial compliance” protection to unlicensed builders.
IV
Having determined that the trial court properly extinguished Millen’s construction lien and dismissed its legal claims, we consider whether Millen was entitled to equitable relief. This Court first considered the interplay between the residential builders act and a court’s equitable powers in Kirkendall v Heckinger, 403 Mich 371; 269 NW2d 184 (1978).
There, plaintiff Frank Kirkendall conveyed a parcel of property to the defendant contractor. Pursuant to the contract, the defendant then paid off Frank’s land contract and back taxes and constructed a house on the land for Frank’s son, plaintiff Dennis Kirkendall. Dennis helped with the construction. A dispute arose about the amount plaintiffs owed, and the plaintiffs brought suit. They asked for equitable relief that would deem the sale an equitable mortgage, return the land to plaintiffs, clear title, and eject defendant from the land. Defendant counterclaimed for breach of contract.
This Court held that the residential builders act barred the defendant’s counterclaim because he had no Michigan residential builder’s license. However, the dismissal of the counterclaim did not end the litigation. The Court had to clear title. It declared that the sale to defendant was an equitable mortgage. If the plaintiffs wanted clear title, they had to first do equity by paying the amount owed to the defendant as an equitable mortgagee:
*670 The plaintiffs sought an equitable remedy. Before ordering the conveyance to Dennis Kirkendall, the trial court was obliged to determine the amount the plaintiffs were required to pay the defendants in order to do equity. As the equitable mortgagee, Heckinger was entitled as a condition to reconveyance to reasonable expenditures for improvements on the property made with the Kirkendalls’ consent (and in fact with Dennis KrrkendalTs active participation) while [defendant] had title to the property. [Id. at 374.]
The Court of Appeals considered the Kirkendall decision in Republic Bank and applied it, enlarging its scope. In Republic Bank, the plaintiff had purchased eight residential lots on which the defendant had a lien. The plaintiff asserted that the liens were invalid, because they were for monies owed for residential improvements made by the defendant, who did not possess a license.
The Court of Appeals concluded that, as an unlicensed builder, the defendant could not place a lien on the properties. However, it required the plaintiff to do equity by paying the defendant for the value of the homes before getting equity in the form of a clear title. The Republic Bank Court declined to distinguish the Kirkendall decision even though, in Republic Bank, the defendant had no valid lien or mortgage that survived dismissal of his claim and clouded title.
In the case before us, the Court of Appeals followed Republic Bank because it was binding authority. MCR 7.215(I)(1). Still, the Court made clear its dissatisfaction with the holding in that case, opining that Republic Bank was wrongly decided and that it should have distinguished Kirkendall on its facts.
We agree that Kirkendall must be distinguished from Republic Bank. First, the Court’s reason for entertaining equity in Kirkendall was because the *671 conveyance to the defendant was valid and clouded title. After the defendant’s counterclaim was dismissed, the plaintiffs’ complaint remained, and the Court had to find an equitable remedy.
Conversely, in both Republic Bank and this case, once it was determined that the defendants’ liens on the properties were defective, the titles were clear. The complaints could be dismissed. No further relief was necessary, equitable or legal. By not recognizing this distinction, the Republic Bank decision allowed an unlicensed contractor leverage to force payment, using equity in a circumstance where no equity was required. Moreover, the relief afforded was barred at law by § 2412.
The Kirkendall case also differs from the case at bar in another key respect: the defendant’s property right there was not only created by the plaintiff, it was acquired in a valid and legal manner. By contrast, both Millen and the defendants in Republic Bank acquired liens by committing a misdemeanor, performing an unlicensed activity. MCL 339.601(3). In addition, they sought to force payment using a construction lien acquired in derogation of the Construction Lien Act.
In its bench ruling granting equitable relief to Millen, the trial court stated that a court in equity may provide for nonlegal, equitable remedies to avoid unduly harsh legal doctrines. Its analysis is invalid because, in this case, equity is invoked to avoid application of a statute. Courts must be careful not to usurp the Legislative role under the guise of equity *672 because a statutory penalty is excessively punitive.[7] As the Court of Appeals stated:
Regardless of how unjust the statutory penalty might seem to this Court, it is not our place to create an equitable remedy for a hardship created by an unambiguous, validly enacted, legislative decree. [245 Mich App 57-58.]
Moreover, as was stated in Bilt-More Homes, Inc v French, 373 Mich 693, 699; 130 NW2d 907 (1964):
“Contracts by a residential builder not duly licensed are not only voidable but void—and it is not for a trial court to begin the process of attrition whereby, in appealing cases, the statutory bite is made more gentle, until eventually the statute is made practically innocuous and the teeth of the strong legislative policy effectively pulled. If cases of such strong equities eventually arise that the statute does more harm than good the legislature may amend it. . . .”
We overrule the holding of Republic Bank. If it were allowed to stand, any unlicensed contractor could defy the residential builders act and the Construction Lien Act by refusing to obtain a Michigan residential builder’s license. It could contract with a residential home owner to perform work on the owner’s home. Then, if a dispute arose over money due, it could cloud the title with a lien and wait until *673 the owner brought suit to clear title. It could then recover the amount due in an equity judgment. Such a result violates MCL 339.2412 and ignores key distinctions in Kirkendall.
CONCLUSION
We hold that Millen Roofing Company’s failure to obtain a residential builder’s license constitutes a bar to its seeking compensation for installing slate on the Stokes’ roof, pursuant to MCL 339.2412. Also, because Millen was unlicensed, its construction lien was invalid. Finally, Millen cannot have equitable relief because any such relief would allow equity to be used to defeat the statutory ban on an unlicensed contractor seeking compensation for residential construction.
The order of the trial court is reversed and the case remanded for proceedings consistent with this opinion.
Corrigan, C.J., and Taylor and Young, JJ., concurred with Kelly, J.

 MCL 339.2401 et seq.

2 This statute was amended while the case was being appealed. A subsection was added that is not relevant to this case.

 We do not agree with the dissent’s footnoted suggestion that Millen could be exempt from licensing as a subcontractor of the plaintiffs. The dissent points out that plaintiffs are allowed by § 2403(b) of the act to function in the capacity of a residential builder with respect to property they own. It suggests that there is a “strong argument” that, under this contract, Millen could be exempted from licensing as a subcontractor of plaintiffs.
In fact, the act prevents Millen from being exempted. If Millen were not the contractor here, it would have to be a person “engage[d] in the business of or actpng] in the capacity of a residential builder” for purposes of the act. Sections 2401(a) and 2403. At subsection (e) of § 2403, such persons must be licensed unless they are working with a contractor licensed under the act. Plaintiffs could have been contractors, but they were never licensed under the act.

 All members of the Court share the concern that the result reached here seems on its face unfair to Millen. However, we, and the concurring justices, agree that this result is mandated by the residential builders act.

 MCL 570.1101 et seq.

 120 BR 84 (ED Mich, 1989).

 Our concurring colleagues assert that the Stokes used the statutory provision to avoid paying for the slate roof. In fact, they tendered a written offer to Millen in July 1994 to pay the balance of the original contract, along with a $2,684 change order, in exchange for unconditional waiver of lien. Millen rejected their offer.
Contrary to Justice Markman’s assertion, post at 676-677, n 3, we make no assessment of the Stokes’ motives in their dealings with Millen. As our colleagues are well aware, their good faith or lack of it was not a consideration available to us in rendering this decision. If equity were available here, we might all have agreed that the trial court acted fairly and reasonably in applying equity as it did.