650 N.W.2d 656 (2002)
James A. CALLAHAN, Plaintiff-Appellant,
v.
BOARD OF STATE CANVASSERS, Michigan Secretary of State, Mary Lou Parks, and Margaret Ann Van Houten, Defendants-Appellees.
Docket No. 122052, Calendar No. 242154.
Supreme Court of Michigan.
September 3, 2002.
On order of the Court, the motion for immediate consideration is GRANTED. The application for leave to appeal from the July 12, 2002, decision of the Court of Appeals is considered, and, pursuant to MCR 7.302(F)(1), we REVERSE the decision of the Board of Canvassers, which considered the second complaint challenging the validity of the nominating petitions in this case. Pursuant to M.C.L. § 168.552(8):
"A complaint respecting the validity and genuineness of signatures on a petition shall not be acted upon ... unless the complaint is received by the board of state canvassers within 7 days after the deadline for the filing of the nominating petitions."
Because the second complaint was filed after the deadline for its consideration, it was error for the Board of Canvassers to consider the complaint challenging the validity of the nominating signatures. Accordingly, the Board improperly refused to place the plaintiff's name on the November 2002 ballot.
WEAVER, J., concurs in the result.
YOUNG, J., concurring.
I concur with the order reversing the decision of the Board of Canvassers. While I do not disagree with the Board's conclusion that plaintiff violated the law in collecting his petition signatures and gave incredible testimony, I conclude that the Board was without authority to entertain the second complaint because the complaint was filed outside the 7-day period contained in the statute. According to the plain language of the statute, a late complaint "shall not be acted upon."
The anomaly is that the untimely, but meritorious, complaint cannot be considered under the statute and plaintiff will appear on the ballot as a judicial candidate-despite the fact that he managed to convince the Board (at the hearing it should not have held) that he was untruthful in testifying that his certified petitions were collected in conformity with law. While I share the dissent's frustration that the delay in filing the complaint at issue was attributable to the Secretary of State, I part company with the dissent's effort to ignore the statute on the ground of "fairness". By operation of law, plaintiff appears to have avoided the consequences of his unlawful collection of petition signatures. This may be one of those occasions where the voters themselves, rather than a court, will have to determine whether plaintiff is worthy of the office he seeks. Our citizens are capable of making such a decision and our Democracy can survive with less than universal judicial intervention and supervision.
As stated, the dissent prefers to remand on the basis of "fairness" to allow plaintiff a second opportunity to make his case that he actually observed those who signed his petition as required by law. I start with the basic proposition that "[r]egardless of how unjust the statutory penalty might seem to this Court, it is not our place to create an equitable remedy for a hardship created by an unambiguous, validly enacted, *657 legislative decree." Stokes v. Millen Roofing Co., 466 Mich. 660, 672, 649 N.W.2d 371 (2002) (citation omitted). Consequently, neither the Board nor this Court have the equitable power to ignore the statute's directive that a late complaint "shall not be acted upon."
Even if such equitable power did exist, the following points would be worth considering. First, there is absolutely no basis for a remand under these circumstances because no one, including the dissent, has identified an error in the Board's factual determinations. The Board has already found that plaintiff's testimony concerning how he collected the signatures was not credible. One of the Board members made the following statement: "I question, severely question, the lack of forthrightness to which you brought your testimony to this board. Had you indicated to us that you saw some of the signatures but not all of the signatures, I would have believed you and I probably would have moved to certify you." Notwithstanding this statement by a Board member, the dissent believes plaintiff deserves another opportunity to prove that he did see "some of the signatures."
No reviewing court, much less this Court, has stated or concluded that the Board's credibility determination was erroneous. Consequently, I see no legal basis for countermanding the core credibility decision of the Board and giving plaintiff a second opportunity to "re-persuade" the Board of his credibility and argue a theory that was not advanced at the first hearing. The dissent also faults the Board of Canvassers because it made no finding as to whether plaintiff could identify individual signatures that were gathered in his presence. However, the dissent ignores the strategy utilized by plaintiff at the hearing, wherein plaintiff claimed that all of the signatures were gathered in his presence. Furthermore, the member's statement quoted above suggests that the issue was squarely before the Board. In short, on the basis of "fairness" the dissent wishes to give plaintiff a second hearing without a stated justification that we require of any other lower tribunal. Equity, even if it were available in this context, should not be compelled to chase and give aid to one so lacking in credibility as plaintiff. But for the statutory bar on the late complaint, I would affirm the determination of the Board to bar plaintiff from the ballot.
MARILYN J. KELLY, J., dissenting.
The majority reverses the determination of the Board of State Canvassers because the Board permitted a challenge to nominating petitions made after the deadline set forth in M.C.L. § 168.552(8). I disagree with the majority's decision.
As Justice Young acknowledges, an error by the Secretary of State staff made it impossible for anyone to object within the statutory timetable to certain of the petition sheets. In such situations, a court should require the Board to hear a challenge to those petitions. Because the Board should have been required to hear this challenge, its decision to do so on its own initiative cannot constitute reversible error.[1]
*658 Instead of reversing the Board's determination to exclude plaintiff from the ballot, I would remand for reconsideration. The Board found that plaintiff collected 6,196 valid signatures. Plaintiff needed 6,200 to qualify as a candidate. I believe that the Board was correct in invalidating signatures obtained outside the immediate presence of the plaintiff, the person circulating the petitions. However, some of the 121 signatures at issue here may have been affixed in plaintiff's immediate presence. Justice Young misconstrues the reason for my decision to remand. I would not remand to challenge any of the Board's determinations. Instead, my remand would be directed at the absence of certain factual determinations.
At the hearing before the Board, plaintiff argued that the rejected signatures were obtained in his presence, as required. He stated that he witnessed all 121 of the signatories sign his petitions, although he was moving about the room when they signed. The Board correctly found this argument incredible. It made no finding, however, as to whether, while in the room, plaintiff was in the immediate presence of at least four of the signatories when they signed. The member's statement quoted in the concurrence leaves no doubt that the Board did not consider that question. Instead, it made the blanket assumption that, since not all 121 signatures were affixed in plaintiff's immediate presence, none of them was.
Therefore, in fairness, I would give plaintiff the opportunity at least to make a showing that four or more of the signatures at issue were affixed in his immediate presence. I consider this a more measured resolution of the matter than doing "rogue equity" by holding the challengers rigidly to the rules while overlooking plaintiff's failure to offer the required proofs.
Michael F. Cavanagh, J., would remand the case to the Board of Canvassers for a hearing on whether enough of the signatures gathered on February 28, 2002, were signed in the plaintiff's presence so as to qualify plaintiff for placement on the ballot.
NOTES
[1] I disagree with Justice Young's position that equity does not lie here. Our system of justice is not so inflexible as to prevent the Board from entertaining a challenge under the circumstances that existed in this case. One may distinguish Stokes v. Millen Roofing Co., 466 Mich. 660, 649 N.W.2d 371 (2002), in that it was a case where the affected party flaunted the statute, then sought relief from the courts. In this case, the affected party tried to but was unable to comply with the statute because the administrative body in control rendered compliance impossible. Our case law recognizes that "there may be an extraordinary case which justifies the exercise of equity jurisdiction in contravention of a statute." Wikman v. City of Novi, 413 Mich. 617, 648, 322 N.W.2d 103 (1982). Practical experience and common sense tell us that this is such a case.