United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 18, 2003**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 02-60246

L FREDERIC LEPOUTRE,

Plaintiff - Counter Defendant - Appellee,

versus

LAWRENCE P. TUCKER,

Defendant - Counter Claimant - Appellant,

-----------------------------------------------------------

PETER M. SCHNEIDERMAN,

Plaintiff,

versus

LAWRENCE P. TUCKER, ET AL,

Defendants,

LAWRENCE P. TUCKER,

Defendant-Cross Claimant - Appellant,

versus

LUCIEN FREDERIC LEPOUTRE,

Defendant - Cross Defendant - Appellee.

Appeal from the United States District Court
for the Southern District of Mississippi
(99-CV-856)

Before DeMOSS and STEWART, Circuit Judges, and LITTLE, District Judge.[*]

---

[*] District Judge of the Western District of Louisiana, sitting by designation.

CARL E. STEWART, Circuit Judge:[**]

Lawrence P. Tucker (Tucker") appeals from the district court's judgment in favor of L. Frederic Lepoutre ("Lepoutre") on Lepoutre's complaint for declaratory relief and from the dismissal of his cross-claim for declaratory relief. For the following reasons, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In 1994, Tucker and Lepoutre, who were business acquaintances, discussed forming a garment manufacturing business in Mississippi. Tucker was established in the garment industry and would bring to the business a strong sales background and customers, while Lepoutre would bring his manufacturing experience. Tucker and Lepoutre agreed that Lepoutre would manage the day-to-day operations while Tucker would continue his ongoing business concerns, including other garment manufacturing companies. Tucker and Lepoutre never executed a formal written document outlining the parameters of their agreement, instead they operated under an unwritten agreement. The parties dispute the particulars of that agreement, especially their respective financial obligations.

The newly formed company opened for business in 1994. On October 31, 1994, National Textile and Apparel, Inc. ("National Textile") was incorporated as a Mississippi corporation. One-thousand shares of common stock were issued - 500 shares each to Lepoutre and Tucker. Both parties made initial contributions of capital of $10,000. Tucker also contributed a piece of machinery valued at $7,000, while Lepoutre personally guaranteed financing for the purchase of a forklift for $16,000 and a computer aided design system for $45,000. Lepoutre also personally guaranteed a revolving line of credit for additional equipment purchases, and he made a personal loan to the

---

[**] Pursuant to 5th CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

corporation of $200,000 to provide working capital. According to Lepoutre, he and Tucker started the business as equal partners, agreeing that both would make equal financial contributions to the business in some fashion, and that it would all "balance" out at the end of the year.[1] Tucker contends that his sole obligation to the venture was to send business to the company.

National Textile soon outgrew its rental space and moved forward with plans to construct a new building to house the operation at a cost of $200,000. Lepoutre approached a bank in Mississippi to obtain $150,000 in mortgage financing. In addition, Lepoutre proposed to Tucker that National Textile obtain a $100,000 loan from the Small Business Administration ("SBA") to provide further working capital. The SBA loan required the personal guarantee of both shareholders. Tucker refused to personally guarantee any of National Textile's debt, including the SBA loan. Tucker told Lepoutre that he and his attorney were "going to come up with some kind of an idea so that we can stay somewhat partners." Tucker conferred with Peter Schneiderman ("Schneiderman"), a Michigan attorney. Soon thereafter, in February 1996, Lepoutre received a letter from an associate of the Michigan law firm of Bornstein & Schneiderman, representing Tucker, and a document entitled "Stock Transfer Option Agreement" (the "Agreement") - the centerpiece of the instant dispute. According to the Agreement, Tucker was to transfer all of his shares of stock to Lepoutre. The Agreement further provided Tucker with an irrevocable option to reacquire the shares at a later date. The shares were to be held in escrow by the law firm. Lepoutre signed the Agreement and endorsed the stock certificate.

---

[1] Lepoutre described their respective financial obligations as follows: "I told him that we're not going to count the beans, you know, as we go. We'll kind of look at it toward the end of the year, but it was an understanding that I was going to guarantee that part. He would guarantee something else. He would buy some other piece of equipment, and we kind of looked at the balance at the end of the year."

3

Following execution of the Agreement, Lepoutre continued to personally guarantee National Textile's debt, including a mortgage for the new building, and the SBA loan. The percentage of business Tucker brought to the business fell significantly and Tucker became dissatisifed with the servicing of his orders. In 1998, Tucker advised Schneiderman that he wished to exercise his option to reacquire the stock under the Agreement. On July 20, 1998, Schneiderman's firm sent a letter to Lepoutre giving him notice that the shares would be delivered to Tucker and asking him to sign an "Acknowledgment of Right to Exercise Stock Option." Lepoutre refused to sign, and referred Schneiderman to his attorney who indicated a willingness to enter into negotiations concerning the repurchase price of the shares. A dispute arose over whether payment, or mere notice, was required to exercise the option under the Agreement.

Schneiderman, the escrow agent for the certificate of stock, filed an interpleader action against both Lepoutre and Tucker in Michigan state court on April 8, 1999. On the same day, Tucker filed a cross-claim declaratory judgment action in Michigan state court against Lepoutre seeking a declaration of the parties' rights under the Agreement. On May 20, 1999, Lepoutre removed the action to federal district court in Michigan where it was subsequently transferred to the Southern District of Mississippi.

Meanwhile, on April 29, 1999, Lepoutre filed a declaratory judgment action against Tucker in Mississippi state court. On June 16, 1999, Tucker removed the case to federal district court based on diversity jurisdiction. This action was consolidated with the interpleader action from Michigan, which was subsequently dismissed. The case was tried in a bench trial. On February 13, 2002, the district court entered its judgment in favor of Lepoutre, and dismissed Tucker's cross-claim with prejudice. Tucker appeals, arguing that (1) the district court misapplied Michigan law when it

4

severed the Agreement, (2) the district court misapplied Mississippi law when it found that Tucker transferred his stock in order to be relieved of his "financial obligations under the parties' shareholder agreement," and (3) the district court created a manifest injustice when it awarded Tucker's shares of stock to Lepoutre for no consideration. For the following reasons, we affirm.

STANDARD OF REVIEW

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed de novo." Kona Tech. Corp. v. S. Pac. Transp. Co., 225 F.3d 595, 601 (5th Cir. 2000). "In reviewing factual findings for clear error, we defer to the findings of the district court unless we are left with a definite and firm conviction that a mistake has been committed." Payne v. United States, 289 F.3d 377, 381 (5th Cir. 2002).

DISCUSSION

I.      Severability

Both parties agree that interpretation of the Agreement is controlled by Michigan law. The district court found that under Michigan law, "a price term is usually considered an essential term of an option agreement." See Oshtemo Township v. City of Kalamazoo, 257 N.W.2d 260, 262 (Mich. App. 1977) ("An option is basically an agreement by which the owner of the property agrees with another that he shall have a right to buy the property at a fixed price within a specified time."). The district court concluded that "there is nothing in this [A]greement that unambiguously grants Tucker the right to reacquire the stock at no cost." We agree.[2] Thus, as the district court explained, in order

---

[2] We also agree with the district court that "the $1 and 'other good and valuable consideration' language . . . refers to consideration for the grant of the option and is not the price term for the reacquisition of the stock."

5

to ascertain the meaning and validity of the Agreement, the parties' intention in not including a reacquisition price term must be determined by reference to extraneous evidence.

The district court fully credited Lepoutre's testimony concerning his belief that Tucker wanted out of the business, and that if Tucker wanted to get back in he would have to pay a price negotiated between the two parties. The district court concluded that if, as Tucker claimed, he really thought that he could exercise the option by merely giving five days notice, then there was no meeting of the minds concerning an essential term (i.e. the reacquisition price) of the option agreement. See Kamalnath v. Mercy Memorial Hosp. Corp., 487 N.W.2d 499, 503 (Mich. App. 1992) (requiring a meeting of the minds on all essential terms). Accordingly, the district court found the option agreement void.

The district court then severed the option portion of the Agreement, leaving the transfer portion enforceable. "A general rule of contract law is that the failure of a distinct part of a contract does not void valid, severable provisions." Begola Services, Inc. v. Wild Brothers, 534 N.W.2d 217, 220 (Mich. App. 1995). When determining severability under Michigan law, the primary consideration is the intent of the parties. Id. The district court stated Michigan law as follows:

> Two principal factors are considered: first, whether the two or more promises or parts of the contract are so *interdependent or interwoven* that the parties must be deemed to have contracted only with a view to the performance of both, and *would not have entered into one without the other*; and second, whether the consideration for the several promises can be apportioned among them without doing violence to the contract or making a new contract for the parties. However, [e]ven though the consideration for each agreement is distinct, if the agreements are interdependent and the parties would not have entered into one in the absence of the other, the contract will be regarded . . . as entire and not divisible.

Dumas v. Auto Club Ins. Assoc., 473 N.W.2d 652, 694 n.87 (Mich. 1991) (internal quotation marks and citations omitted) (emphasis added).

6

The district court found nothing in the language of the Agreement indicating that the option agreement was part and parcel of Tucker's agreement to transfer the stock. Moreover, the district court found no credible evidence indicating that Tucker would not have transferred the stock without the option agreement. The district court found that "Tucker agreed to transfer the stock and thereby rid himself of his financial obligations under the parties' shareholder agreement; and in what the court concludes was an essentially independent vein, Tucker sought to secure an option to later get back into the business at no specified time and on no specified terms."

Tucker contends that the district court misapplied Michigan law. Tucker cites to the following language from Stokes v. Millen Roofing Co. in support of his argument: "[I]f the agreements are interdependent and the parties would not have entered into one in the absence of the other, the contract will be regarded . . . as entire and not divisible." 649 N.W.2d 371, 374 (Mich. 2002) (citations omitted). In Stokes, the Michigan Supreme Court also noted that in order for severance to be appropriate, "the illegal provision must not be central to the parties' agreement." Id. Stokes provides precisely the same legal standard applied by the district court. Tucker has failed to show that the district court misapplied Michigan law.[3] Moreover, we find no clear error in the district court's factual findings. Thus, we hold that the district court did not err in severing the Agreement.

II.    Enforceability of the Stock Transfer

_____

[3] Tucker further argues that the district court inappropriately relied on Begola Services, Inc. and Tecorp Ent'mt Ltd. v. Heartbreakers, Inc., No. 209861, 2001 WL 740007 (Mich. App. 2001) (unpublished opinion). We disagree. The district court properly cited to both cases for Michigan's severability rules.

Tucker argues that the district court misapplied Mississippi law governing corporations when it determined that Tucker transferred his shares to Lepoutre in order to "be relieved of his shareholder obligations" and his "financial obligations under the parties' shareholder agreement." Tucker asserts that the rights of the parties as shareholders are governed by Mississippi corporations law, under which a shareholder is not personally liable for the acts or debts of the corporation. MISS. CODE ANN. § 79-4-6.22. Tucker argues that he had no future financial obligations to National Textile arising from his ownership of the shares. Moreover, Tucker asserts that there was never a "shareholder agreement" requiring him to make equal financial contributions for his stock in the company. Rather, Tucker contends that he was asked only to provide customers and sales. Lepoutre, however, contends that Tucker's duties arose from his personal agreement with Lepoutre to contribute to the business, made prior to the formation of National Textile. Lepoutre asserts that Tucker elected to transfer his shares to Lepoutre in order to get out of the business, when he decided that he could not or would not contribute as he had previously agreed.

The district court found that in 1994, Lepoutre and Tucker agreed they would start a garment business together, but they "never executed a formal written contract setting forth their respective obligations vis-a-vis the business." Instead, they operated under an unwritten "shareholder agreement." Despite the district court's use of the term "shareholder agreement" to describe the parties' initial business agreement, it is apparent that the district court found that Tucker had obligations under an initial agreement between him and Lepoutre which existed before National Textile was incorporated. Indeed, the business began operations prior to its incorporation. Regarding the parties' respective financial obligations, the district court credited the testimony of Lepoutre that "he and Tucker had started the business with the expectation they would be 50/50

8

'partners,' meaning that each agreed to make equal financial contributions." Thus, the district court concluded that the transfer agreement was enforceable because Tucker received relief from his financial obligations under this so-called "shareholder agreement." After reviewing the record, we find no clear error in the district court's factual findings, and we agree that the stock transfer is enforceable.[4]

III.    Manifest Injustice

Finally, Tucker contends that the district court created a manifest injustice by awarding Tucker's shares of stock to Lepoutre for no consideration. Tucker contends that Lepoutre admitted that Tucker had the right to reacquire the shares for some negotiated price. The district court

---

[4] Tucker further argues that any unwritten agreement between him and Lepoutre would have been unenforceable under Mississippi's statute of frauds, thus Tucker would have no obligation for future financial contributions. Under Mississippi law,

> An action shall not be brought whereby to charge a defendant or other party: . . . (d) upon any agreement which is not to be performed within the space of fifteen months from the making thereof; . . . unless, . . . the promise or agreement upon which such action may be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith or signed by some person by him or her thereunto lawfully authorized in writing.

MISS. CODE ANN. § 15-3-1. "[W]here the contract is for an indefinite period with a possibility of performance within 15 months, it is not within the statute of frauds." Amer. Chocolates, Inc. v. Mascot Pecan Co., 592 So. 2d 93, 95 (Miss. 1991). In the case of Beane v. Bowden, the Mississippi Supreme Court found that an oral agreement to enter into a joint venture was not barred by § 15-3-1. 399 So. 2d 1358, 1361 (Miss. 1981). The court stated that:

> Here, the oral contract was for an indefinite duration and susceptible of performance within 15 months, thus removing it from the statute of frauds. In addition, the statute of frauds does not apply where a contract has been performed by both parties. The present joint venture agreement was substantially performed.

Id. Similarly, we find that the unwritten agreement between Lepoutre and Tucker would fall outside Mississippi's statute of frauds because it was susceptible to performance within 15 months, despite the fact that it was for an indefinite duration.

determined, as a matter of fact, that Tucker transferred the shares to Lepoutre for consideration (i.e. relief from his financial obligations under the unwritten "shareholder agreement" between Lepoutre and Tucker). Because we agree with the district court that Tucker received consideration for his stock, we hold that no manifest injustice was created.

## CONCLUSION

For the reasons stated above, and outlined further in the district court's well-reasoned and thorough Memorandum Opinion and Order, we affirm.

AFFIRM.