*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DILLMAN & UPTON, INC.,

      Plaintiff/Counterdefendant,

v

THOMAS PAUL WARD, SMEDE-SON STEEL
& BUILDING SUPPLY COMPANY, and F&M
CONTRACTORS, INC.,

      Defendants/Cross-
      Defendants/Cross-Plaintiffs,

and

KEITH A. BIRBERICK,

      Defendant/Cross-Defendant/Cross-
      Plaintiff-Appellee,

and

INSTALLED BUILDING PRODUCTS
COMPANY, LLC, doing business as
FIBERCLASS INSULATION, and LAFATA
ENTERPRISES, INC., doing business as
LAFATA CABINETS,

      Defendants/Counterplaintiffs/Cross-
      Plaintiffs,

and

UNPUBLISHED
January 30, 2020

No. 346509
Macomb Circuit Court
LC No. 2017-002177-CH

THE TILE SHOP, LLC,

> Defendant/Third-Party Plaintiff/Counterplaintiff/Cross-Defendant,

and

EVERGREEN BUILDING, INC.,

> Defendant/Cross-Defendant/Cross-Plaintiff-Appellant,

and

CUSTOM DRYWALL, INC.,

> Defendant/Third-Party Plaintiff/Counterplaintiff/Cross-Defendant,

and

MODDE CONSTRUCTION COMPANY, INC.,

> Defendant,

and

MANCINI WARD ARCHITECTURAL DESIGN & PLANNING, LTD.,

> Third-Party Defendant,

and

CHURCH & CHURCH, INC., doing business as CHURCH'S LUMBER YARDS,

> Third-Party Defendant/Cross-Defendant/Intervening Plaintiff,

and

PLATINUM ELECTRIC, INC., MANNINO TILE, LLC, DISCOVER PLUMBING, INC., and

DIAMOND GRANITE, INC.,

Intervening Plaintiffs.

_____

Before:  METER, P.J., and FORT HOOD and REDFORD, JJ.

PER CURIAM.

Cross-plaintiff Evergreen Building, Inc. ("Evergreen"), appeals as of right, challenging the trial court's order denying its motion for summary disposition against cross-defendant Keith A. Birberick and also denying its motion for reconsideration.  We affirm.

## I.  BACKGROUND

This case concerns the construction and financing of a new residential home.  Birberick entered into a contract with Evergreen, a residential-home-building corporation, for the construction of a new residence.  Under the contract—which was signed by Birberick, Thomas Ward (Evergreen's president), and Franco Mancini (Evergreen's vice-president)—Birberick agreed to purchase a new residence from Evergreen for $350,000.  Birberick was required to separately purchase a vacant lot and quitclaim the real property to himself and Evergreen, who would quitclaim the deed back to Birberick upon final payment.  The parties agreed that Birberick would pay Evergreen a 16% management fee for expenses associated with building the new residence as well as any fees for subcontracted work.  Other general conditions in the contract included that Evergreen would seek quotations[1] for each subcontractor trade and present them to Birberick for the selection of the subcontractor to perform work on the project.  Birberick also had the right to select certain subcontractors and provide quotations.  Any extra or additional work had to be confirmed by a memorandum signed by both parties at an agreed construction fee plus management fees.  Evergreen agreed to "make every effort to complete the construction of the residence within a reasonable period of time," but would not be liable for any delays in the completion.

In accordance with this agreement, Birberick purchased an empty lot and quitclaimed the real property to himself and Evergreen.  Completion of the home took almost two years, after which Birberick took occupancy of the home.  Evergreen claimed that Birberick owed $586,148.87 at the end of the project and it appears that Evergreen recorded its quitclaim deed after Birberick declined to pay this amount.

It is undisputed that, at the time the contract was signed and during construction of the home, Evergreen was not licensed by the Department of Licensing and Regulatory Affairs to perform residential-building services.  Its two principal members, Ward and Mancini, were,

_____

[1] The parties dispute whether the contract required Evergreen to seek a maximum of three subcontractor quotes or a minimum of three quotes.

however, individually licensed as residential builders. Throughout the course of construction, Evergreen hired several subcontractors to perform various services. The parties dispute whether Evergreen did so in accordance with the contract and whether Birberick was aware of any additional costs associated with the subcontractor's services. What is clear, however, is that many of the subcontractors were not paid for their services. Birberick claimed that he made payments to Evergreen throughout the course of the construction, which were, at least partially, intended to pay for subcontractor services; Evergreen essentially argues that Birberick failed to pay for the services.

This action began as a subcontractor's complaint against Ward and Birberick to foreclose on the property for unpaid services.[2] During the pendency of this case, other entities filed or joined in intervening complaints, cross-complaints, countercomplaints, and third-party claims, making various allegations against Evergreen, Ward, and Birberick, but all claiming they were owed money for their work on the construction project. Several subcontractors filed construction liens on the property. As relevant to this appeal, Evergreen filed a cross-complaint against Birberick, alleging breach of contract and unjust enrichment in the amount of $357,555.97.[3] Birberick filed his own cross-complaint, alleging that Evergreen had breached the contract by failing to pay the subcontractors and by failing to seek his approval for additional costs. Birberick also alleged that Ward improperly recorded a lien on the property and that Evergreen was not licensed to perform residential construction. Birberick sought quiet title in his sole name as well as monetary damages.

Birberick and Evergreen eventually filed competing motions for summary disposition. The trial court concluded that Evergreen could not bring an action to recoup the actual cost of construction and could not claim unjust enrichment because Evergreen was not a licensed residential builder. The trial court noted that Evergreen had never applied for a license, and that Ward was not a "qualifying officer" under the statute. Accordingly, the trial court granted Birberick's motion for summary disposition, dismissing Evergreen's claims for breach of contract and unjust enrichment. The trial court also concluded that Birberick was entitled to a discharge of Ward's lien, reasoning that Ward was not a party to the contract and was not granted an interest in the property.[4] The trial court granted lien foreclosure of the subject property with regard to several of the subcontractors, resolved the remaining claims asserted by the subcontractors, and closed the case. The various subcontractors are not parties to this appeal. During the pendency of the remaining subcontractor claims, Birberick moved the trial court for

---

[2] The original complaint alleged that Ward had applied for a commercial line of credit with the subcontractor, that the subcontractor had furnished goods and services to Ward to make improvements on the property based on his contractual promise to pay on an open-account basis, and that Ward had refused or failed to pay according to the terms of their contract.

[3] Ward, who is not a party to this appeal, filed an individual cross-complaint against Birberick, alleging breach of contract (based on the contract with Evergreen), unjust enrichment, fraudulent misrepresentation, and innocent misrepresentation, and seeking exemplary damages.

[4] The trial court also granted summary disposition to Birberick on Ward's individual claims.

reconsideration of its summary-disposition order, which the trial court denied. Sometime subsequent, Evergreen was approved for its residential-building license. This appeal followed.

## II. ANALYSIS

"We review de novo a trial court's grant or denial of summary disposition." *Tomra of North America, Inc v Dep't of Treasury*, 325 Mich App 289, 293-294; 926 NW2d 259 (2018). "A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim, and is appropriately granted when, except as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." *Id*. at 294.[5] We review de novo issues of statutory construction and equitable relief. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008); *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008).

On appeal, Evergreen argues that the trial court erred by dismissing its claims for breach of contract and unjust enrichment, and that the quitclaim deed should be considered an equitable mortgage on the property. Regarding its claim for breach of contract, Evergreen first argues that the trial court erred by concluding that an unlicensed builder cannot maintain an action for breach of contract if its principal members are licensed. We disagree.

MCL 339.2401(a) of the Occupational Code, MCL 339.101 *et seq.*, defines "residential builder" as:

> a person engaged in the construction of a residential structure or a combination residential and commercial structure who, for a fixed sum, price, fee, percentage, valuable consideration, or other compensation, other than wages for personal labor only, undertakes with another or offers to undertake or purports to have the capacity to undertake with another for the erection, construction, replacement, repair, alteration, or an addition to, subtraction from, improvement, wrecking of, or demolition of, a residential structure or combination residential and commercial structure . . . or a person who erects a residential structure or combination residential and commercial structure except for the person's own use and occupancy on the person's property.

With certain exceptions, the Occupational Code generally requires residential builders to be licensed by the Department of Licensing and Regulatory Affairs. MCL 339.601(1). Regarding a corporation acting as a residential builder, MCL 339.2405(1) provides the following licensing procedure:

---

[5] Although the parties brought their motions under MCR 2.116(C)(8), (C)(9), and (C)(10), the trial court considered the parties' motions under MCR 2.116(C)(10) because the parties had relied on matters outside the pleadings during their arguments. Likewise, we consider the issue under MCR 2.116(C)(10).

Subject to [MCL 339.2404c[6]], if a corporation . . . applies for a license, the applicant shall designate 1 of its officers . . . as a qualifying officer. A qualifying officer who takes and passes the examination and meets all other requirements of this article is entitled to a license to act for the corporation . . . . A qualifying officer shall also obtain and maintain a license under this article as an individual. A qualifying officer is responsible for exercising the supervision or control of the building or construction operations necessary to secure full compliance with this article and the rules promulgated under this article. . . . If an individual licensee is also a qualifying officer, the department shall include the individual's name and license number on any license issued to the individual as a qualifying officer.

In addition to being precluded from holding itself out as a residential builder or engaging in that occupation, MCL 339.601(1), the Occupational Code precludes an unlicensed residential builder from enforcing a residential-building contract. MCL 339.2412 provides in pertinent part:

(1) A person or qualifying officer for a corporation or member of a residential builder or residential maintenance and alteration contractor shall not bring or maintain an action in a court of this state for the collection of compensation for the performance of an act or contract for which a license is required by this article without alleging and proving that the person was licensed under this article during the performance of the act or contract.

* * *

(3) A person or qualifying officer for a corporation or a member of a residential builder or residential maintenance and alteration contractor shall not impose or take any legal or other action to impose a lien on real property unless that person was licensed under this article during the performance of the act or contract.

In this case, it is undisputed that Evergreen was not licensed as a residential builder until after the trial court denied Evergreen's motion for reconsideration. Yet, despite its lack of a license, Evergreen held itself out as a residential builder to Birberick, entered into a contract with Birberick in which it agreed to construct a residential home, held itself out to subcontractors as a residential builder when contracting for certain services under the contract, and oversaw the completion of the residential home. Again, the Occupational Code required Evergreen to obtain a license before it held itself out as a residential builder or engaged in that occupation. MCL 339.601(1).[7] Therefore, because Evergreen's performance of its residential-building contract

---

[6] MCL 339.2404c provides special circumstances for an individual who was a qualifying officer on December 21, 2007, and was subsequently denied an individual license because of financial instability. It is not applicable to this appeal.

[7] Indeed, Evergreen's violation of MCL 339.601(1) exposed it to the possibility of civil fines of up to $25,000. MCL 39.2412.

with Birberick constituted the unlicensed practice of residential building, MCL 339.2412 precluded Evergreen from maintaining an action for any breach of that contract. Accordingly, the trial court did not err by dismissing Evergreen's breach-of-contract action.

Evergreen argues that, although it was not individually licensed during its performance of the contract, it should not be precluded from enforcing the contract because its principal members, Ward and Mancino, were individually licensed. We disagree. To obtain a license for residential building, MCL 339.2405(1) unambiguously requires the corporation to designate a qualifying officer to take the licensing exam; that officer must be licensed in his individual capacity *and* in his capacity as a qualifying officer. At the time of its performance of the contract, Evergreen had not designated a qualifying officer. Accordingly, although its principal members were individually licensed, they were not licensed as qualifying officers, meaning that the corporation could not be licensed to perform residential-building services. The contract in this case was between Evergreen and Birberick, not between Birberick and Evergreen's principal members. Accordingly, because Evergreen was not licensed as a residential builder, it could not maintain an action for compensation for the performance of a residential-building contract nor could it impose a lien on the property. See *Annex Constr, Inc v Fenech*, 191 Mich App 219, 219-220; 477 NW2d 103 (1991); *Bernard F Hoste, Inc v Kortz*, 117 Mich App 448, 451; 324 NW2d 46 (1982).

Evergreen argues that the Occupational Code does not require a residential builder to be licensed at the time a residential-building contract is signed to maintain a collection action; according to Evergreen, because it subsequently obtained its license, it should be allowed to bring the collection action. As support for this argument, Evergreen cites *Edgewood Dev, Inc v Landskroener*, 262 Mich App 162; 684 NW2d 387 (2004). We agree with Evergreen that *Edgewood* stands for the proposition that a residential builder need not be licensed at the time the contract is signed to maintain a collection action. See *id*. at 167. Nevertheless, *Edgewood* does not alter the requirement that a residential builder be licensed at the time of the *performance* of the contract. See *id*. at 168. Moreover, *Edgewood* does not abrogate MCL 33.92405(1)'s unambiguous prohibition on unlicensed builders bringing actions to collect on the performance of a residential-building contract. See *id*. Again, Evergreen did not receive its license until after the trial court denied its motion for reconsideration, well after the completion of the project. Accordingly, because Evergreen was not licensed during the performance of the contract, MCL 339.2412(1) precludes Evergreen from enforcing the contract.

Evergreen also maintains that the trial court ignored MCL 445.885(1)(b) when it dismissed Evergreen's claims. MCL 445.885 provides:

> (1) An owner-builder intending to live in the residential structure at the onset of construction shall do either of the following upon completion of construction and issuance of the occupancy permit regarding a residential structure:
>
> (a) Reside in the residential structure.
>
> (b) Place the residential structure up for sale in any manner allowed by law if, due to unforeseen circumstances, the owner-builder is unable to reside in

the residential structure. This subdivision allows the owner-builder to utilize this exception not more than once per calendar year.

In turn, MCL 445.883(a) defines an owner-builder as "an individual who is not a licensed residential builder and who builds, or acts as a general contractor for the construction of, a residential structure in which that individual or a member of that individual's family actually resides, or intends to occupy for his or her own use, upon the issuance of an occupancy permit."

Essentially, Evergreen argues that, because it received a deed to the property, it could perform residential construction services without a license and subsequently sell the property to Birberick. We disagree. Evergreen cannot qualify as an owner-builder because Evergreen, a corporation, never intended to occupy the residential structure. To the extent that Evergreen argues that its principle members were owner-builders, the same exclusion applies: because neither member intended to occupy the residential structure after its completion, neither member qualifies as an owner-builder. Rather, the residential structure contemplated by the construction contract was intended at the onset of construction to be a residence for Birberick, who did move into the residence after construction was completed. There was never an intent expressed that Evergreen or any of its members would reside in the home.

Next, Evergreen argues that summary disposition was premature because discovery was ongoing at the time of the trial court's ruling. Summary disposition is premature when discovery stands a fair chance of uncovering support for an opposing party's position on a disputed issue. *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 292; 769 NW2d 234 (2009). Evergreen admits that it was not licensed at the time it performed the contract. Because this sole undisputed fact justifies the trial court's denial of Evergreen's claim, further discovery would not stand a fair chance of supporting Evergreen's position.

Evergreen argues that, rather than granting summary disposition on its breach-of-contract claim, the trial court should have fashioned an equitable remedy "to balance the respective rights of the parties while keeping the management fee contract intact." Along these lines, Evergreen argues that "Birberick has been unjustly enriched if Evergreen is not paid." The trial court, however, may not invoke equity to avoid a clear statutory dictate. *Stokes v Millen Roofing Co*, 466 Mich 660, 671-673; 649 NW2d 371 (2002); *Eastbrook Homes, Inc v Dep't of Treasury*, 296 Mich App 336, 347; 820 NW2d 242 (2012). Because Evergreen failed to obtain a residential-building license before performing the residential-building contract, MCL 339.2412(1) unambiguously precludes Evergreen from recovering under the contract. Equity cannot be invoked to avoid this statutory result.[8]

---

[8] We note that the result in this case is not as harsh as it may appear: on appeal, Birberick argues that he paid at least $152,479.69 to Evergreen and an additional $235,941.14 to the subcontractors. With an estimated contract price of $350,000, it does not appear that Birberick received an unfair benefit.

Similarly, Evergreen argues that the quitclaim deed that it received as security for payment was an equitable mortgage, and that the trial court therefore erred by extinguishing its ownership interest. Again, however, equitable remedies cannot be used to avoid clear statutory provisions. *Stokes*, 466 Mich at 671-673. The quitclaim deed was clearly fashioned to secure Evergreen's payment under the contract. Because, under MCL 339.2412(1), Evergreen is not entitled to payment under the contract, there is no justification for the continuance of the deed or any lien. "Regardless of how unjust the statutory penalty might seem to this Court, it is not our place to create an equitable remedy for a hardship created by an unambiguous, validly enacted, legislative decree." *Stokes*, 466 Mich at 672 (internal citation and block notation omitted). Imposing an equitable mortgage in this case would be akin to ignoring the Legislature's licensing requirements for residential builders—a usurpation we will not entertain.

Finally, Evergreen argues that Ward, its owner, is entitled to a quantum meruit award for completing the construction on the home. Ward, however, is not an appellant in this case and, accordingly, it is improper for Evergreen to raise arguments on his behalf. Moreover, we note, again, that the contract was between Evergreen and Birberick. Ward signed the contract as Evergreen's owner and therefore there is no basis to conclude that Ward completed the work on the home on his own behalf, instead of as a representative for Evergreen.

Affirmed. As the prevailing party, Birberick may tax costs. MCR 7.219.

/s/ Patrick M. Meter
/s/ Karen M. Fort Hood
/s/ James Robert Redford