*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SAN MARINO IRON, INC.,

Plaintiff-Appellant,

v

LOUIS HAJI,

Defendant-Appellee.

FOR PUBLICATION
May 26, 2022

No. 355643
Oakland Circuit Court
LC No. 2019-175768-CK

Before: REDFORD, P.J., and SAWYER and MURRAY, JJ.

SAWYER, J. (*dissenting*).

I respectfully dissent.

The question posed in this case is whether a person who designs, fabricates, and installs a wrought-iron railing for a staircase in a residence must be licensed as a residential maintenance and alteration contractor (RMAC) under MCL 339.2401(b). The trial court concluded that plaintiff[1] was required to be licensed, and because plaintiff was not licensed, plaintiff was precluded from bringing suit to recover under the contract with plaintiff under MCL 339.2412(1). I conclude that no license would have been required if the only service rendered was the design and fabrication of the railing, but because plaintiff also installed the railing in defendant's home, a license was required. Accordingly, I would affirm the trial court's grant of summary disposition under MCR 2.116(C)(8) (failure to state a claim).

---

[1] Plaintiff's brief tends to use the term "plaintiff" interchangeably to refer both to San Marino Iron and its owner, Dave Ciavaglia. Because plaintiff does not argue that either the individual or the corporation are licensed, or that a different result would apply to one versus the other, this opinion will use the term "plaintiff" interchangeably as well.

When the parties entered into their contract, and when plaintiff installed the railing, MCL 339.2401(b), as amended by 1991 PA 166,[2] defined an RMAC as:

> a person who, for a fixed sum, price, fee, percentage, valuable consideration, or other compensation, other than wages for personal labor only, undertakes with another for the repair, alteration, or an addition to, subtraction from, improvement of, wrecking of, or demolition of a residential structure[3] or combination residential and commercial structure, or building of a garage, or laying of concrete on residential property, or who engages in the purchase, substantial rehabilitation or improvement, and resale of a residential structure, engaging in that activity on the same structure more than twice in 1 calendar year . . . .

Plaintiff argues that it is not an RMAC. Rather, plaintiff argues that it is principally an artisan of unique pieces of metal and the installation of that metal is merely incidental to its design and creation of the piece. While I do not dispute that it is the artisan aspect of the project that is the primary purpose of plaintiff's activities, it is the installation of the piece that ultimately requires plaintiff to be licensed as an RMAC. Specifically, the installation of the railing constitutes a repair, addition to, alteration, or improvement of the residential structure and falls within the provisions of MCL 339.2401(b). Plaintiff only cites to an unpublished decision of this Court dealing with a home improvement contractor to support a contrary conclusion. That case is neither precedential nor on point.

A somewhat stronger argument for plaintiff is the provisions of MCL 339.2404(3),[4] which sets forth a list of "crafts and trades" that a license authorizes an RMAC to perform:

> [T]he department may issue a residential maintenance and alteration contractor's license to an individual who applies for the license and who qualifies for the license by passing the examination. A license authorizes the licensee, according to the applicant's qualifications, crafts, and trades, to engage in the activities of a residential maintenance and alteration contractor. A license includes the following crafts and trades: carpentry; concrete; swimming pool installation; waterproofing a

---

[2] The Legislature amended MCL 339.2401 with 2020 PA 341, which was made retroactive to January 1, 2019. But plaintiff installed the railing in July 2018. Accordingly, the previous version applies, and all citations herein are to that version. The changes to subdivision (a) were purely stylistic. 2020 PA 341.

[3] The previous version of MCL 339.2401(c) defined a residential structure as "a premises used or intended to be used for a residence [sic] purpose and related facilities appurtenant to the premises, used or intended to be used, as an adjunct of residential occupancy." Neither party disputes that defendant's home satisfied this definition.

[4] The version in effect at the time plaintiff installed the railing also included "painting and decorating" among the list of crafts and trades, but the Legislature removed this language with 2018 PA 527 (effective March 28, 2019). The Legislature made no other change to this provision.

basement; excavation; insulation work; masonry work; roofing; siding and gutters; screen or storm sash installation; tile and marble work; and house wrecking. A license shall specify the particular craft or trade for which the licensee is qualified.

The essence of plaintiff's argument is that its activity of creating and installing the custom railing does not fall within any of the activities on the list. But I find this argument failing for two reasons. First, because the railing is ultimately attached to the wooden structure of the building, it falls within the meaning of "carpentry."[5]

Second, even if plaintiff's activities do not fall within the meaning of "carpentry," I am not persuaded that this compels the conclusion that plaintiff advances. If we accept plaintiff's argument that only those trades and crafts listed in MCL 339.2404(3) require an RMAC license, that would create a conflict between that section and the broader language of MCL 339.2401. Statutory provisions are to be read in a cohesive manner, reasonably, and in context.[6] To read § 2404(3) as limiting the requirements to have an RMAC license to those crafts and trades specifically listed would create a certain conflict with the broader language of § 2401. But to do so also overlooks the use of the word "includes" in § 2404(3). While "include" may refer to the whole list of items, it also may refer to "part of a whole." See Random House Webster's College Dictionary (2d). If the use of the word "includes" reflects an intent for the list in § 2404(3) to be non-exhaustive, then the two sections can harmoniously be read together.

For these reasons, I conclude that plaintiff is required to possess an RMAC license in order to install the metal works that it creates. This then leads to the question whether plaintiff may enforce its contract with defendant in light of the fact that it did not possess such a license and it cannot.

The statutory provision is very clear. Under MCL 339.2412(1), an unlicensed RMAC may not bring or maintain an action for compensation for work it performed if that work required a license:

> A person or qualifying officer for a corporation or member of a residential builder or residential maintenance and alteration contractor shall not bring or maintain an action in a court of this state for the collection of compensation for the performance of an act or contract for which a license is required by this article without alleging and proving that the person was licensed under this article during the performance of the act or contract.

---

[5] *Merriam-Webster's Collegiate Dictionary* (11th ed) defines "carpentry" as "the art or trade of a carpenter" and "carpenter" as "a worker who builds or repairs wooden structures or their structural parts." Clearly, the installation of the railing on the wooden staircase involves building or repairing a structural part of a wooden structure.

[6] *McCahan v Brennan*, 492 Mich 730, 739; 822 NW2d 747 (2012).

Relatedly, MCL 339.2412(3) provides that an RMAC "shall not impose or take any legal or other action to impose a lien on real property unless that person was licensed under this article during the performance of the act or contract."

In this regard, this case is controlled by the Michigan Supreme Court's decision in *Stokes v Millen Roofing Co*.[7]  In *Stokes*, the defendant, an unlicensed roofer, contracted with the plaintiff to install a new roof, including providing the roofing materials.  When the plaintiff refused to pay for the roof, the defendant placed a lien on the house and the plaintiff sued to clear title.  The plaintiff counterclaimed for breach of contract, quantum meruit, and foreclosure on the construction lien.[8]  Of particular import to the case before us, the Court in *Stokes* concluded that the unlicensed contractor was not only precluded from being compensated for the installation of the roof, but also could not recover for the value of the materials supplied.

In rejecting the roofing company's argument that it should be reimbursed for the value of the materials because a supplier does not need to be licensed, the Court[9] opined:

> The fact that Millen [the roofing company] was not required to be licensed to supply slate is of no consequence here.  In order for the "supplier" portion of this contract to be enforced, it would have to be severed from the illegal portions of the agreement.  As the dissent points out, for that to occur, the illegal provision must not be central to the parties' agreement.  See 2 Restatement Contracts, § 603, pp 1119-1120.
>
>> [I]f the agreements are interdependent and the parties would not have entered into one in the absence of the other, the contract will be regarded . . . as entire and not divisible.  [3 Williston, Contracts (3d ed), § 532, p 765.]
>
> Hence, the contract can be bifurcated only if the agreement to install the materials is independent of the agreement to supply them.  But, here the agreements were not independent of one another.  Applying the test formulated by the dissent, it becomes apparent that the illegal section, which provided for the installation of a slate roof, was central to the parties' agreement.  The parties' contract required Millen to "furnish and install" the roofing components and did not specify the portion of the total cost attributable solely to materials.  If the parties had not intended Millen to install the roof, the Stokes would have had the installer they selected deliver the slate.  It follows that the contract is entire and indivisible.
>
> Even if, normally, the contract could be bifurcated, the statute prohibits it.  Section 2412 bars a suit for compensation if a license was necessary for performance of "an act or contract."  The statute requires us to look for either an

---

[7] 466 Mich 660; 649 NW2d 371 (2002).

[8] *Id.* at 662-663, 665.

[9] *Stokes*, 466 Mich at 666-667 (second and third alterations in original).

act or a contract requiring a license. It does not make provision for bifurcating building contracts into separate labor and supply components. Accordingly, it is irrelevant that Millen could have supplied slate without a license.

Similar to the roofing company in *Stokes*, plaintiff argues it may still recover compensation from defendant because it is a designer and fabricator of wrought-iron railings that only incidentally installs the railings. That may be so, but *Stokes* leaves no room for this argument. Plaintiff's contract with defendant was for "[l]abor, material *and installation*." Under *Stokes*, MCL 339.2412(1) does not permit bifurcation of the contract.[10] Therefore, because the installation of the railing made plaintiff an RMAC, there is no basis for permitting plaintiff to recover simply because its installation was only incidental to its obligations under the contract.

Finally, plaintiff argues that, if it is not entitled to be paid for the railing itself, it is entitled to have the railing returned to it.[11] Again, however, *Stokes* prevents this remedy. In *Stokes*, the trial court had ruled that, if the plaintiff chose not to pay the defendant for the roofing materials, then the defendant was entitled to reclaim the slate roofing materials it had installed as an equitable remedy.[12] The Supreme Court concluded that equity could not be "invoked to avoid application of a statute. Courts must be careful not to usurp the Legislative role under the guise of equity because a statutory penalty is excessively punitive."[13] The Court then went on to say:[14]

> Moreover, as was stated in *Bilt–More Homes, Inc v French,* 373 Mich 693, 699; 130 NW2d 907 (1964):
>
> "Contracts by a residential builder not duly licensed are not only voidable but void—and it is not for a trial court to begin the process of attrition whereby, in appealing cases, the statutory bite is made more gentle, until eventually the statute is made practically innocuous and the teeth of the strong legislative policy effectively pulled. If cases of such strong equities eventually arise that the statute does more harm than good the legislature may amend it . . . ."

While I do not necessarily disagree with plaintiff's position that there is a certain inequity in defendant's being able to keep the railing without paying for it, the law is clear that there is no remedy available to plaintiff to avoid that result.

---

[10] *Stokes*, 466 Mich at 667.

[11] The trial court originally ruled that plaintiff was entitled to the return of the railing. The trial court reversed this conclusion on defendant's motion for reconsideration.

[12] *Stokes*, 466 Mich at 663.

[13] *Id.* at 671-672.

[14] *Id.* at 672.

In sum, by installing the railing rather than just supplying the railing, plaintiff was required to have an RMAC license.  Being unlicensed, plaintiff is precluded by statute from enforcing its contract with defendant, including payment for the railing itself.

I would affirm.


/s/ David H. Sawyer