# Order

**Michigan Supreme Court**
**Lansing, Michigan**

December 29, 2011

6/October 2011

141255

Robert P. Young, Jr.,
Chief Justice

Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra,
Justices

PROGRESSIVE MICHIGAN INSURANCE
COMPANY,
          Plaintiff-Appellant,

v

WILLIAM SMITH and SHERI HARRIS,
          Defendants,
and

SCOTT MIHELSIC and ANDREA MIHELSIC,
          Defendants-Appellees,
and

PIONEER STATE MUTUAL INSURANCE
COMPANY,
          Intervening Defendant.

SC: 141255
COA: 287505
Kent CC: 07-003903-CK

_____/

On order of the Court, leave to appeal having been granted and the briefs and oral arguments of the parties having been considered by the Court, we VACATE our order of December 17, 2010. The application for leave to appeal the March 16, 2010 judgment of the Court of Appeals is DENIED, because we are no longer persuaded that the question presented should be reviewed by this Court.

YOUNG, C.J. (*concurring*).

*The judicial philosophical dilemma in statutory interpretation is . . . whether the "jurist interpreter" will be faithful to the actual statutory text and thus the intent of the lawgiver, or whether the jurist will be faithful to his or her own subjective policy desires.*

-Robert P. Young, Jr., *A Judicial Traditionalist Confronts Justice Brennan's School of Judicial Philosophy*.[1]

The dissents of Judge MARKEY in the Court of Appeals and Justice MARILYN KELLY in this Court illustrate the interpretive "dilemma" that I describe above when judges choose to ignore the statutory words.

I concur in this Court's order vacating our prior order in this case and denying leave to appeal. This is a simple case. MCL 500.3009(2) clearly and unambiguously requires that insurance companies place particular statutorily specified notice language in certain insurance policy documents when excluding a named driver pursuant to that provision.[2] Progressive, the insurer, failed to comply with this requirement and is thus required to pay the claim. I write to respond to the dissents in the Court of Appeals and this Court.

There is no ambiguity in the requirement that the Legislature's precise statutory disclaimer must be used in insurance policy documents in order to effectuate the exclusion of a bad driver. In this case, Progressive failed to include the required statutory disclaimer but paraphrased it, suggesting that its paraphrase was "close enough" to avoid paying the claim. The dissents here and in the Court of Appeals believe that "close enough" is as valid in law as it is in horseshoes.

---

[1] 33 OK CITY UNIV LAW REV 263, 280 (2008).

[2] The Legislature has made it possible for insureds and insurers to exclude bad drivers from a policy. The reason why an insured would wish to do so is obvious: the coverage of a bad driver in the household drastically increases the price of insurance. In order to make this exclusion, though, the Legislature has required that certain policy documents have the following specific disclaimer, otherwise the named driver exclusion "shall not be valid." MCL 500.3009(2) provides:

> If authorized by the insured, automobile liability or motor vehicle liability coverage may be excluded when a vehicle is operated by a named person. Such exclusion shall not be valid unless the following notice is on the face of the policy or the declaration page or certificate of the policy and on the certificate of insurance:

> Warning—when a named excluded person operates a vehicle all liability coverage is void—no one is insured. Owners of the vehicle and others legally responsible for the acts of the named excluded person remain fully personally liable.

However, the majority of the Court of Appeals correctly held that, because the notice language employed on the insured's certificate of insurance in this case deviated from that statutory language, Progressive did not comply with the statutory notice requirement. Thus, the court was obligated to enforce the Legislature's directive that the named driver exclusion "shall not be valid."[3] Progressive was required to pay the claim of the imperfectly excluded bad driver and appealed here from that decision.

The dissenting opinion of Judge MARKEY in the Court of Appeals, although professing an adherence to the philosophy of interpreting the law as plainly written, nevertheless *ignored* the statutory language:

> [O]n rare occasion there may arise a situation where following this philosophy with myopic rigidity effects not only a complete thwarting of the Legislature's intent but also a profoundly unfair and inequitable result. . . . Must we as strict constructionists abandon "common sense" and render a decision not only remarkably hyper-technical legally but also profoundly unjust and jarring to what I will presume to say is the average person's sense of justice and fair play? I think not."[4]

While my concurring colleague may argue that the result urged by the dissent is not so unreasonable, statements such as this represent a shocking departure from the rule of law.[5] All Michigan citizens should be extraordinarily troubled by any judge who advances the notion that the rule of law must be enforced *unless* a judge finds an outcome in a particular case to be one of which he personally disapproves. In a constitutional republic, judges have no such authority, and the rule of law crumbles where a constitutional, validly enacted statutory mandate can be ignored simply because it offends a judge's sensibilities—even if on "rare occasion[s]."

---

[3] See *Progressive Mich Ins Co v Smith*, 287 Mich App 537 (2010).

[4] *Id.* at 546, 550 (MARKEY, J., dissenting).

[5] My concurring colleague correctly states that the obligation of a judge committed to the rule of law is to read the law "reasonably." Yet I believe that it is decidedly *un*reasonable and "indefensible," to sanction the view that a court may substitute its own words, even if they are synonymous, for those chosen by the Legislature. As my concurring colleague has otherwise observed, "we believe that it is the constitutional duty of this Court to interpret the words of the lawmaker, in this case the Legislature, and *not* to substitute our own policy preferences in order to make the law less 'illogical.' . . . It is only by interpretations of the law that are in accord with the words of the lawmaker—that is, interpretations in which judges look *outside* themselves for a source of law—that the decisions of courts are truly removed from the realm of politics and policymaking." *Robertson v DaimlerChrysler Corp*, 465 Mich 732, 758, 761 (2002).

With all due respect to Judge MARKEY, our judicial oaths require judges to enforce the *Legislature's* policy choices, even when we may personally find the outcome in a given case "unjust," "inequitable," "jarring," "hyper-technical," or contrary to what we intuit an "average person's" sensibilities to be.[6] As this Court has stated, it is a mere "caricature" of judicial restraint for a judge "to assert that her common sense should be allowed to override the language of the statute."[7]

As Judge MURRAY aptly noted in his concurring opinion in the Court of Appeals, our judicial duty is more than to "almost always" apply a statute's unambiguous words to the facts presented.[8] The law must *always* guide the outcome, regardless of whether a judge perceives that outcome in a given case to be formalistic or "inequitable."

This Court has prided itself on its commitment to the rule of law, and in particular a return to fundamental constitutional principles regarding judicial interpretation of statutes.[9] This has been true even where, as a personal matter, a Justice may be discomforted by the ultimate result.[10] But in a government characterized by the

---

[6] The conclusion of my dissenting colleague on this Court suffers from the same analytical and interpretative errors as that of Judge MARKEY. See *infra* (MARILYN KELLY, J., dissenting). The dissent here is content to allow a deviation from the statutory mandate because Progressive's decision to use "more plain-English" words rather than the statutorily mandated words satisfies the "intent" of MCL 500.3009(2). Doing so, my dissenting colleague here urges, is apparently appropriate because it avoids "elevat[ing] form over substance" and, therefore, prevents "an unreasonably harsh and unjust result." The goal exhibited in the dissent here and in the Court of Appeals—to effectuate an intent other than that plainly stated in the statutory text—fails to apply first principles of judicial interpretation.

[7] *Elezovic v Ford Motor Co*, 472 Mich 408, 425 n 23 (2005).

[8] *Progressive Mich Ins Co*, 287 Mich App at 544 (MURRAY, J., concurring).

[9] See, e.g., *People v Dowdy*, 489 Mich 373 (2011); *Allison v AEW Cap Management*, 481 Mich 419 (2008); *Rowland v Wash Co Rd Comm'n*, 477 Mich 197 (2007); *People v Derror*, 475 Mich 316 (2006); *Devillers v Auto Club Ins Ass'n*, 473 Mich 562 (2005); *Mayor of Lansing v Mich Pub Serv Comm*, 470 Mich 154 (2004); *Taylor v Gate Pharmaceuticals*, 468 Mich 1 (2003); *Stokes v Millen Roofing Co*, 466 Mich 660 (2002); *Wickens v Oakwood Healthcare System*, 465 Mich 53 (2001); *Robinson v City of Detroit*, 462 Mich 439 (2000); *People v McIntire*, 461 Mich 147 (1999).

[10] See, e.g., *Stokes*, 466 Mich at 677 (MARKMAN, J., concurring) (stating that even where a result is "unfair" and "highly inequitable," "we cannot allow equity to contravene the clear statutory intent of the Legislature.").

separation of powers, the people of this state elect judges to enforce the law as the political branches of our government have given it to us.

The rule of law requires a judge to be subservient to the law itself, not the law to be subservient to the personal views of a judge.

MARKMAN, J. (*concurring*).

Although I reach the same result as the Chief Justice, and, even had I not, I would have articulated my position much differently than do the dissents in this Court and in the Court of Appeals, I nonetheless respectfully believe that the Chief Justice is overly severe in his criticism of these dissents.

The issue here is whether an insurance policy stating that an owner of an insured vehicle, under specified circumstances, remains "personally *responsible*" conforms with a statute requiring that all policies must communicate that an owner, under these circumstances, remains "personally *liable*." In my judgment, plaintiff-insurer's insurance policy did not satisfy the statute because an exact identity in language is required in the instant circumstances, in which an insurance statute has specified precise language for inclusion in such a policy. However, I also believe that this is a case in which a judge who adheres to the interpretative philosophy articulated by the Chief Justice, as do I, may quite reasonably disagree with his, and my, conclusion. In fairly giving meaning to the law, the obligation of the "textualist" or "interpretivist" is not to read the law "literally" or "narrowly," or to engage in "strict construction," but it is simply to read the law "reasonably." In light of this premise, I do not believe that either of the dissents has reached an indefensible conclusion. A judge who views the difference between "liability" and "responsibility" as being of no reasonable consequence in the insurance policy at issue is not "ignoring words," engaging in a "shocking departure from the rule of law," or otherwise acting in disregard of his or her "oath of office." Nor do I believe, as suggested by the Chief Justice's citation to *People v McIntire*, that a judge who undertakes within the most narrow realm to consider the genuine "absurdity" of a result is acting in violation of his or her judicial powers. See *Cameron v Auto Club Ins Ass'n*, 476 Mich 55, 78-86 (2006) (MARKMAN, J., concurring). While I respect the Chief Justice's convictions — and while I appreciate his apparently-approving references to my own past jurisprudential statements, to which I continue to adhere — I also believe that there are many better cases in which to bring those convictions to bear.

MARILYN KELLY, J. (*dissenting*).

> [C]anons [of interpretation] are not mandatory rules. They are guides that "need not be conclusive." They are designed to help judges determine the Legislature's intent as embodied in particular statutory language. And other circumstances

evidencing congressional intent can overcome their force. *Chickasaw Nation v United States*, 534 US 84, 94 (2001). [citations omitted].

Because I agree with Judge MARKEY's Court of Appeals dissent, I dissent from the Court's decision to vacate our December 17, 2010 order granting leave to appeal and denying plaintiff's application for leave to appeal. I would reverse the Court of Appeals decision and reinstate the decision of the trial court.

Defendant Smith owned a vehicle but had no driver's license. Thus, he could not obtain no-fault insurance or license plates for the vehicle. He added defendant Harris to the title as a co-owner of the vehicle. Harris was able to obtain insurance from Progressive but signed a form listing Smith as an excluded driver under the policy, as permitted by MCL 500.3009(2).

Smith drove the vehicle and became involved in a collision with another vehicle owned by defendants Scott and Andrea Mihelsic. The Mihelsics filed a third-party negligence suit against Smith that he failed to defend, resulting in a default judgment against him. Progressive then brought this declaratory judgment and filed a motion for summary disposition arguing that it had no duty to indemnify Smith because he was a named excluded driver under MCL 500.3009(2). The Mihelsics opposed the motion and filed their own motion for summary disposition, arguing that the exclusion was invalid. Progressive, they argued, had failed to use the exact language that appears in the statute. The trial court denied the Mihelsics' motion and granted Progressive's motion for summary disposition.

The Court of Appeals reversed the trial court in a 2-1 decision. It concluded that Progressive's failure to use the exact language that appears in MCL 500.3009(2) rendered the named-driver exclusion invalid.

The principal question on appeal is whether Progressive's use of the word "responsible" in place of "liable" on Harris's certificate of insurance, by itself, renders the named-driver exclusion invalid. The language of MCL 500.3009(2) provides:

> If authorized by the insured, automobile liability or motor vehicle liability coverage may be excluded when a vehicle is operated by a named person. Such exclusion shall not be valid unless the following notice is on the face of the policy or the declaration page or certificate of the policy and on the certificate of insurance: Warning — when a named excluded person operates a vehicle, all liability coverage is void — no one is insured. Owners of the vehicle and others legally

> responsible for the acts of the named excluded person remain fully personally liable.

Progressive used the warning language verbatim on Harris's insurance declaration. However, on her certificate of insurance, it replaced the word "liable" with the more plain-English "responsible."

To begin with, nothing signals that the Legislature intended that the warning language it used in the statute must be used verbatim in insurance policies. The statute does not require it nor does it employ block quoting or quotation marks to show that its wording is the only way to communicate its message.

Moreover, this Court has "frequently observed that statutory interpretation is primarily an exercise in locating the intent of the Legislature. . . . While examination of statutory language is certainly a crucial element in that inquiry, . . . a dogged literalism should not be employed to defeat the Legislature's intent."[11] The language Progressive used on the certificate of insurance satisfied the intent of the Legislature. The intent of MCL 500.3009(2) is to inform policy owners that their insurance is ineffective for damages caused by an excluded driver and that they risk personal responsibility for those damages. Black's Law Dictionary defines "liable" as "responsible or answerable in law; legally obligated."[12] "Responsibility" is defined as "liability."[13] The insertion of the word "responsible" in place of "liable" did not materially change the meaning of the warning. Moreover, nothing in the record indicates that it misled or confused either Smith or Harris. To find the named-driver exclusion that was used here invalid is to elevate form over substance and defy common sense.

Chief Justice YOUNG asserts in his concurring statement that Judge MARKEY's position is a "shocking departure from the rule of law." He is perhaps too readily shocked. Her statement and mine are not departures at all. Our reading is faithful to the statutory language and effects exactly what the Legislature intended when it enacted this law: an exempted driver should not receive insurance benefits. The result of the majority's decision is to enforce the law in a manner that violates the Legislature's intent.[14] My personal views play no part in my interpretation. I interpret the statutory language to conform with the obvious reason it was written.[15]

---

[11] *Goodridge v Ypsilanti Township Board*, 451 Mich 446, 453 n 8 (1996).

[12] Black's Law Dictionary (8th ed).

[13] Black's Law Dictionary (8th ed).

[14] *United States v Ron Pair Enterprises*, 489 US 235, 242 (1989). "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'"; *Nat Railroad Pass Corp v Nat Assoc of Railroad Pass*, 414 US 453, 458

In this case, Smith knew he could not obtain insurance, so he got Harris to buy it. He then drove his truck illegally with no license and no insurance. It is quite a departure from the statute's intent to require Progressive to indemnify Smith when he knowingly violated the law and knew himself to be excluded from the insurance policy. The Court requires Progressive to provide insurance coverage for a party it never had a contract with and never agreed to insure.

Moreover, although the Mihelsics are correct that the insurance commissioner's bulletin 79-11 addresses the named-driver exclusion and quotes the § 3009(2) language, bulletin 81-4 also deals with the excluded-driver exception. It addresses certificates of insurance, shows examples of what the forms should look like and states what language should be on the forms. In bulletin 81-4, the commissioner writes that the wording on the certificate "shall appear as follows." It then uses the word "responsible" in place of "liable." [16] Although the bulletins do not supplant the statute, there is unrefuted evidence that the industry relies on the commissioner for guidance. Thus, I do not think it unreasonable for Progressive to have relied on Bulletin 81-4 for direction in wording its insurance certificates.

The named-driver exclusion in this case should be found valid and enforceable. Its deviation in wording from MCL 500.3009(2) is not material. Smith was not confused by it. It would seem an unreasonably harsh and unjust result to allow Smith to profit from his wrongful actions.

---

(1974). "[E]ven the most basic general principles of statutory construction must yield to clear contrary evidence of legislative intent."

[15] *Salas v Clements*, 399 Mich 103, 109 (1976) (Departure from literal construction of a statute is justified when such construction would produce absurd and unjustified results and would be clearly inconsistent with the purposes and policies of the act.); *People v Bewersdorf*, 438 Mich 55, 68 (1991) (An unambiguous statute is to be given effect, although departure may be justified when literal construction would produce absurd and unjust results and would be clearly inconsistent with the purposes and policies of the act in question.); *Franges v General Motors Corp*, 404 Mich 590, 612 (1979) (Statutes must be construed to prevent absurdity, hardship, injustice, or prejudice to the public interest.); *Webster v Rotary Elec Steel Co*, 321 Mich 526, 531 (1948) (The occasion of and necessity for a statute are matters of judicial concern, and the purpose of a statute should be effected if possible. Its spirit and purpose should prevail over its strict letter. In construing a statute, injustice in its application should be prevented and absurd consequences avoided.).

[16] Bulletin: Insurance Bureau 81-4, *Automobile Insurance Policies; Certificates of Insurance* (1981).

Therefore, I dissent and would reverse the Court of Appeals and reinstate the decision of the trial court.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

December 29, 2011

_____
Clerk

t1220