*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SL TOWN CENTER REALTY, LLC, AM
SOUTHFIELD, LLC, PL SOUTHFIELD, LLC,
ROZ SOUTHFIELD, LLC, and HJ SOUTHFIELD,
LLC,

UNPUBLISHED
July 27, 2023

　　　　Plaintiffs-Appellants,

v

No. 361664
Oakland Circuit Court
LC No. 2020-184576-CB

MIDWEST VETERINARY PARTNERS, LLC,

　　　　Defendant-Appellee.

Before: RIORDAN, P.J., and MARKEY and YATES, JJ.

PER CURIAM.

In this dispute regarding a proposed commercial lease, plaintiffs appeal as of right the trial
court's opinion and order granting defendant's motion for summary disposition under MCR
2.116(C)(10) (no genuine issue of material fact), and denying plaintiffs' partial motions for
summary disposition under MCR 2.116(C)(9) (opposing party has failed to state a valid defense)
and (C)(10). We affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In early 2020, defendant began looking to expand from their premises in Novi, Michigan,
into a larger office space. Plaintiffs, which owned Southfield Town Center, a complex consisting
of four separate buildings, entered negotiations with defendant. During January and February
2020, defendant and plaintiffs negotiated the terms of a proposed lease agreement regarding Suite
1700 in the 3000 building of the Southfield Town Center. Part of the proposed lease agreement
required the interior of Suite 1700, which was an entire floor of the building, to be demolished and
rebuilt to suit defendant's anticipated designs. Because defendant wanted to vacate its Novi office
before the construction of Suite 1700 was complete, the terms of the proposed lease agreement
included a Temporary Occupancy Agreement (TOA). Under the TOA, which was attached to the
proposed lease agreement as Exhibit D, plaintiffs agreed to allow defendant to temporarily occupy

-1-

Suite 2050 of the 2000 building of Southfield Town Center. The proposed lease agreement thus incorporated the TOA.

On February 24, 2020, defendant's chief operating officer signed the proposed lease agreement and sent it to plaintiffs. At about the same time, defendant also wired plaintiffs over $100,000 for the security deposits and one month's prepaid rent for both Suites 1700 and 2050. Article 31 stated: "[Defendant] agrees that its execution of this Lease constitutes a firm offer to enter the same which may not be withdrawn for a period of thirty (30) days after delivery to [plaintiffs] . . . ." Further, plaintiffs' "acceptance shall be evidenced only by [plaintiffs] signing and delivering this Lease to [defendant]."

On or about March 3, 2020, after obtaining mortgagee approval of the proposed lease, plaintiffs' representative signed the proposed lease agreement. Plaintiffs, however, did not immediately deliver the signed document to defendant. Nevertheless, plaintiffs did contract with a company to begin demolition of the interior of Suite 1700 as contemplated in the proposed lease agreement. Plaintiffs also allowed defendant to access Suite 2050, but it was agreed among the parties that defendant never occupied the space. As the COVID-19 pandemic began to affect businesses, defendant initiated discussions regarding cost-saving methods. Defendant decided to withdraw its offer to form a lease under Article 31 of the proposed lease agreement. Defendant informed plaintiffs of such on March 20, 2020, at 9:30 a.m., indicating that it was no longer offering to rent either Suite 1700 or Suite 2050.

It is undisputed that, before defendant sent the e-mail revoking its offer, plaintiffs had not delivered an executed proposed lease agreement to defendant. Plaintiffs did so, however, in response to defendant's e-mail. Thus, plaintiffs signed and delivered the proposed lease agreement to defendant about on March 20, 2020, at 11:34 a.m., about two hours after defendant revoked the offer. The parties exchanged e-mails regarding their disagreement whether defendant was able to revoke the offer at the time it did so. The parties could not reach agreement, which eventually led to the instant litigation.

Plaintiffs alleged three alternative counts regarding liability. The first two alternating claims depended on whether the trial court intended to enforce defendant's promise to keep its offer open for 30 days. First, if it did not, then plaintiffs argued they also were not bound to accept the offer in the manner listed in Article 31 because enforcing such would effectively sever the terms in Article 31. Instead, plaintiffs would be permitted to accept the contract in any manner contemplated under the common law. Plaintiffs contended that they accepted the offer by signing the proposed lease agreement, informing defendant of such, and commencing actions in conformance with the proposed lease agreement. Because this acceptance occurred before defendant withdrew its offer, there was a binding contract. Second, if the trial court did enforce the promise of defendant to keep the offer open for 30 days because it was a binding option contract, then plaintiffs' acceptance in the form demanded by Article 31 was timely. The attempted revocation by defendant, on the other hand, was ineffective.

Plaintiffs' third alternative argument relied on the doctrine of promissory estoppel. Specifically, plaintiffs anticipated an argument from defendant that the option was not binding because there was no consideration for defendant's promise to keep the offer open for 30 days. Should the trial court agree, plaintiffs still encouraged the trial court to enforce defendant's firm

offer on promissory estoppel grounds because plaintiffs detrimentally relied on defendant's promise. Once defendant's promise was enforced as written, plaintiffs' acceptance in conformance with Article 31 was timely and a contract was formed. Plaintiffs sought money damages and specific performance of the proposed lease agreement as remedies.

After discovery, the parties exchanged motions for summary disposition. Plaintiffs presented two separate motions, one with respect to liability and the other regarding remedies. Plaintiffs argued that there was no genuine issue of material fact they were entitled to judgment with respect to defendant's liability under at least one of the three alternating theories discussed above. Defendant, on the other hand, argued that plaintiffs' claims should be summarily dismissed because (a) plaintiffs were required to accept the offer in a specific manner and did not do so until after the offer was revoked; (b) defendant properly revoked the offer before acceptance because the option listed in Article 31 of the proposed lease agreement was unenforceable when it was not supported by independent consideration; and (c) the doctrine of promissory estoppel did not apply in this case and, even if it did, any reliance on defendant's nonbinding promise to keep its offer open was categorically unreasonable.

The trial court considered the briefs, waived oral arguments, and issued a written opinion and order granting defendant's motion for summary disposition under MCR 2.116(C)(10) and dismissing the case. The trial court agreed with defendant's reasoning and denied plaintiffs' motions for partial summary disposition. Given its determination that defendant was not liable to plaintiffs, the trial court denied as moot plaintiffs' motion for summary disposition regarding remedies. This appeal followed.

## II. PRESERVATION AND STANDARD OF REVIEW

To preserve an issue for appeal, "a party need only bring the issue to the [trial] court's attention—whether orally or in a brief or both." *Glasker-Davis v Auvenshine*, 333 Mich App 222, 228; 964 NW2d 809 (2020). In their briefing regarding the competing motions for summary disposition with the trial court, plaintiffs raised the same arguments now brought in this appeal. Consequently, because they were brought to the trial court's attention, these claims are preserved for this Court's review. *Id.*[1]

Although plaintiffs moved for summary disposition under both MCR 2.116(C)(9) and (C)(10) during proceedings with the trial court, it only challenges the decision as it relates to MCR 2.116(C)(10). "This Court [] reviews de novo decisions on motions for summary disposition brought under MCR 2.116(C)(10)." *Pace v Edel-Harrelson*, 499 Mich 1, 5; 878 NW2d 784 (2016). A motion for summary disposition under MCR 2.116(C)(10) "tests the factual sufficiency

---

[1] Defendant contends that plaintiffs waived the argument that promissory estoppel could be used to enforce the option contract in lieu of consideration by failing to raise it with the trial court. Our review of the record, however, reveals that plaintiffs consistently argued that promissory estoppel applied to making the offer irrevocable, not to the entire proposed lease agreement. Consequently, defendant's argument is factually incorrect. Because plaintiffs brought this same argument to the trial court's attention during the proceedings below, it is preserved for our review. *Glasker-Davis*, 333 Mich App at 228.

of the complaint . . . ." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). Summary disposition is proper when there is no "genuine issue regarding any material fact." *Id*. "A genuine issue of material fact exists when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Auto-Owners Ins Co v Campbell-Durocher Group Painting & Gen Contracting, LLC*, 322 Mich App 218, 224; 911 NW2d 493 (2017) (quotation marks and citation omitted). "The existence and interpretation of a contract are questions of law reviewed de novo." *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006).

III. OPTION CONTRACT

Plaintiffs contend that summary disposition in defendant's favor was unwarranted because there was a valid and binding option contract requiring defendant to keep its offer open for 30 days. We disagree.

A. APPLICABLE LAW

"[A] contract is an agreement between parties for the doing or not doing of some particular thing and derives its binding force from the meeting of the minds of the parties . . . ." *In re Mardigian Estate*, 312 Mich App 553, 562; 879 NW2d 313 (2015) (quotation marks and citation omitted), aff'd 502 Mich 154 (2018). "A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *AFT Mich v Mich*, 497 Mich 197, 235; 866 NW2d 782 (2015). "Before a contract can be completed, there must be an offer and acceptance." *Clark v Al-Amin*, 309 Mich App 387, 394; 872 NW2d 730 (2015) (quotation marks and citation omitted). "Further, a contract requires mutual assent or a meeting of the minds on all the essential terms." *Id*. (quotation marks and citation omitted). Consideration is an essential or material term in a contract. See *Zurcher v Herveat*, 238 Mich App 267, 295; 605 NW2d 329 (1999). "This required mutual assent on all material terms is judged by an objective standard based on the express words of the parties and not on their subjective state of mind." *Bodnar v St John Providence, Inc*, 327 Mich App 203, 213; 933 NW2d 363 (2019).

"An option contract is an enforceable promise not to revoke an offer. It is a continuing offer or agreement to keep an offer open and irrevocable for a specified period." *In re Egbert R Smith Trust*, 480 Mich 19, 25; 745 NW2d 754 (2008), quoting 17 CJS, Contracts, § 55, p 502. "It is a contract right, and the optionor must keep the offer open. Until an option is exercised, the optionor has the duty not to revoke the offer during the life of the option." *Smith Trust*, 480 Mich at 25, quoting 17 CJS, Contracts, § 55, p 502. Options, "if based on valid consideration, are contracts which may be specifically enforced." *Bd of Control of Eastern Mich Univ v Burgess*, 45 Mich App 183, 185; 206 NW2d 256 (1973), citing *Gustin v Union Sch Dist of Bay City*, 94 Mich 502, 505; 54 NW 156 (1893). "Conversely, that which purports to be an option, but which is not based on valid consideration, is not a contract and will not be enforced." *Burgess*, 45 Mich App at 185, citing *Bailey v Grover*, 237 Mich 548; 213 NW 137 (1927).

-4-

"Consideration for an option may be nominal." *Sulzberger v Steinhauer*, 235 Mich 253, 257; 209 NW 68 (1926). Indeed, "[o]ne dollar is valid consideration for an option to purchase land, provided the dollar is paid or at least tendered." *Burgess*, 45 Mich App at 185, citing *Wayne Woods Land Co v Beeman*, 211 Mich 360, 362; 178 NW 696 (1920). While such consideration need only be nominal, "[t]he consideration for the sale, in the event of acceptance, is entirely apart from the consideration for the option, and such consideration must be specified." *Sulzberger*, 235 Mich at 257. In other words, the consideration required to make an option a binding contract, and thus, enforceable, must be separate from the consideration under the contract that would result from one party accepting the offer mandatorily kept open by the terms of the option. *Id*.

## B. ANALYSIS

The trial court properly concluded that there was not, as a matter of law, an option contract between plaintiffs and defendant.

The provision at issue in the present case is Article 31 of the proposed lease agreement, which in its entirety states:

**ARTICLE 31**

**OFFER**

> The submission and negotiation of this Lease shall not be deemed an offer to enter the same by [plaintiffs], but the solicitation of such an offer by [defendant]. [Defendant] agrees that its execution of this Lease constitutes a firm offer to enter the same which may not be withdrawn for a period of thirty (30) days after delivery to [plaintiffs] (or such other period as may be expressly provided in any other agreement signed by the parties). During such period and in reliance on the foregoing, [plaintiffs] may, at [plaintiffs'] option (and shall, if required by applicable Law), deposit any security deposit and Rent, and proceed with any plans, specifications, alterations or improvements, and permit [defendant] to enter the Premises, but such acts shall not be deemed an acceptance of [defendant]'s offer to enter this Lease, and such acceptance shall be evidenced only by [plaintiffs] signing and delivering this Lease to [defendant].

As can be seen from its language, Article 31 begins by establishing that the proposed lease agreement must be construed as an offer from defendant to plaintiffs. The next sentence states: "[Defendant] agrees that its execution of this Lease constitutes a firm offer to enter the same which may not be withdrawn for a period of thirty (30) days after delivery to [plaintiffs] (or such other period as may be expressly provided in any other agreement signed by the parties)." The parties generally agree that the above language is consistent with an option, as it states that defendant was making an irrevocable offer for a set time period. See *Smith Trust*, 480 Mich at 25 (quotation marks and citation omitted) ("An option contract is an enforceable promise not to revoke an offer."). The third and final sentence of Article 31 discusses the manner in which plaintiffs were permitted to exercise the option and accept defendant's offer.

Defendant executed the proposed lease agreement on February 24, 2020, and sent the document to plaintiffs. Plaintiffs agree that they did not pay any money to defendant as

consideration for the option presented in Article 31. Indeed, plaintiffs acknowledge that they did not present any consideration for the option at the time defendant executed and delivered the proposed lease agreement. Instead, plaintiffs assert that their performance of certain actions—beginning demolition of Suite 1700 and providing possession of Suite 2050 to defendant—amounted to consideration at a later date, which caused the option to become a binding contract. Plaintiffs' argument lacks merit for two reasons.

Initially, Michigan caselaw is clear that an option contract requires consideration to be binding, and such consideration must be separate from the consideration under the general contract that would result from exercising the option. *Sulzberger*, 235 Mich at 257; *Burgess*, 45 Mich App at 185. The example from *Sulzberger*, 235 Mich at 257, elucidates the meaning of the foregoing statement of law. In that case, our Supreme Court considered an option contract, which contained an irrevocable offer for the buyer to purchase land from the seller at a given price within 90 days. *Id*. at 254-255. The option stated the irrevocable offer was made "[i]n consideration of the sum of one ($1.00) dollar and other valuable considerations to us in hand paid, the receipt of which is hereby acknowledged . . . ." *Id*. (quotation marks omitted). If the buyer sought to exercise the option within the 90-day period, the buyer would pay $1,500 per acre for the land. *Id*. at 255. In considering whether the seller was required to keep the offer open for 90 days, our Supreme Court noted that the consideration of $1 was adequate. *Id*. at 257. Further, the Court reasoned, "[t]he consideration for the sale, in the event of acceptance, is entirely apart from the consideration for the option . . . ." *Id*. In other words, the consideration for the option of $1 was completely separate from the consideration due for purchase of the land in the underlying contract, which was $1,500 per acre. *Id*.

Thus, according to our Supreme Court in *Sulzberger*, the consideration due under the contract to be performed after exercising the option is not consideration for the option itself. *Id*. Plaintiffs contend that they provided consideration for the option to defendant in the form of beginning demolition of Suite 1700 and providing possession of Suite 2050. However, plaintiffs' performance of those actions was specifically contemplated as consideration for the proposed lease. Article 35(D) of the proposed lease agreement noted that plaintiffs were required to provide defendant with possession of Suite 2050 under the terms of the lease, should it become effective. More specific information regarding Suite 2050, including rent payments and the security deposit, were addressed in the TOA, which was attached to and incorporated into the proposed lease agreement as Exhibit D. All of the actions by plaintiffs with respect to Suite 2050, then, were contemplated under the terms of the proposed lease agreement. Thus, plaintiffs' surrendering possession of Suite 2050 to defendant was not consideration for the option, it was consideration under the lease that would have formed had plaintiffs timely accepted defendant's offer. *Id*.

Plaintiffs also contend that they provided consideration for the option in the form of beginning demolition, which would lead to construction, of Suite 1700. Article 1 of the proposed lease agreement stated that the lease would not commence until there was substantial completion of the required construction on Suite 1700. The clause referred to Exhibit B of the proposed lease agreement, which was the Work Letter. The proposed lease agreement, in Article 38, incorporated Exhibit B as part of the proposed lease agreement itself. The Work Letter, and thus the proposed lease agreement, required plaintiffs to work with defendant to plan the demolition and reconstruction of the interior of Suite 1700. Defendant was provided with various deadlines to meet, and plaintiffs agreed to contract out the work and cover the costs via an allowance, up to a

certain extent. In other words, plaintiffs contracting out for the demolition of Suite 1700 was specifically contemplated in the proposed lease agreement, and therefore, was consideration due by plaintiffs as part of the bargain struck between the parties, should the lease have become effective. Consequently, plaintiffs' demolition of Suite 1700 was not consideration for the option. *Id*.

Because there was no independent consideration for the option identified and tendered by plaintiffs, *id*., defendant's promise to keep the offer open for 30 days was unenforceable, *Burgess*, 45 Mich App at 185. In an attempt to escape this conclusion, plaintiffs argue that they performed the actions early, before they were required to under the proposed lease agreement, which transformed them into consideration for the option. Even assuming this is true, though, plaintiffs' argument suffers from a different fatal flaw. As noted, an option contract, like any contract, "requires mutual assent or a meeting of the minds on all the essential terms," *Clark*, 309 Mich App at 394 (quotation marks and citation omitted), and consideration is an essential term in a contract, *Zurcher*, 238 Mich App at 295. Plaintiffs' attempts to transform later actions into consideration for the option fails because, for there to be an option contract, there must be mutual assent to the consideration for the option. *Clark*, 309 Mich App at 394. Article 31, which contains the alleged option, contains no indication of an agreement between plaintiffs and defendant regarding the consideration provided to defendant from plaintiffs to keep the offer open. In other words, defendant never agreed that it would make an irrevocable offer in exchange for plaintiffs beginning demolition of Suite 1700 and giving defendant access to Suite 2050. Troublingly, plaintiffs' claims would allow for a party to turn a consideration-free promise into a binding contract by providing any consideration they deem fit, at a time they choose. This is antithetical to the idea of contract formation, which requires mutual assent to all material terms. *Id*.

Plaintiffs rely on *Feiler v Midway Sales, Inc*, 363 Mich 105; 108 NW2d 884 (1961). In that case, the buyers sought to purchase fixtures for their delicatessen business, which was in the owner's building. *Id*. at 107-108. The sellers agreed to provide the fixtures, but requested a $10,000 down payment on delivery of the fixtures. *Id*. at 108. The sellers were concerned about the solvency of the buyers, so they requested written assurance the $10,000 would be paid before beginning fabrication. *Id*. The owner wrote a letter to the sellers, indicating that the owner agreed to loan the buyers $10,000 to help with fixtures. *Id*. Thus, when the fixtures were delivered, the owner promised to issue a $10,000 check to the buyers and the sellers jointly. *Id*. The sellers provided the fixtures, but the owner did not pay the $10,000. *Id*. On appeal, the owner argued that the letter was not a binding contract "because there was no consideration for its undertaking . . . ." *Id*. at 110. Our Supreme Court disagreed, explaining: "Whether or not an enforceable obligation arose at the moment [the owner] gave [the sellers] its letter, upon performance of the conditions set forth therein by [the sellers] in reliance upon [the owner's] promise, the obligation became enforceable against [the owner]." *Id*.

Plaintiffs' reliance on the case is misplaced. The letter at issue in *Feiler* effectively stated that the owner would pay $10,000 to the sellers for the fixtures in the building. At the time the letter was sent, the sellers had not performed any actions under the terms of the letter. Therefore, at that time, the sellers had not explicitly provided any consideration for the contract. However, by the time litigation commenced, the fixtures had been fabricated and delivered, which was the stated consideration owed by the sellers in exchange for the owner's payment of $10,000. Consequently, by the time of litigation, the consideration in the contract due from the sellers had

been tendered, so the owner was then bound to the contract. This analysis does not apply to this case. The most obvious difference between the two cases is the one that distinguishes them. The letter in *Feiler* specifically stated that the consideration due from the sellers—fabricating and delivering the fixtures—which would bind the owner to paying $10,000. Article 31 in the proposed lease agreement contains no indication about what consideration is due from plaintiffs that would bind defendant to the option. Consequently, plaintiffs' performance of the actions identified by them was not similar to the facts of *Feiler*, 363 Mich at 108-110, because there is a significant difference between agreeing to consideration and performing it at a later date, and performing any action of choice and unilaterally qualifying it as consideration.

The closest Article 31 comes to reciting consideration for the option is by listing things plaintiffs could do, but were not required to do. But even then, Article 31 does not specifically state that plaintiffs' performance of those actions was consideration for the option, but instead, states plaintiffs could perform those actions without being deemed to have accepted defendant's offer. Moreover, considering plaintiffs had no obligation to perform those actions before commencement of the proposed lease, we cannot conclude that this language qualifies as an indication of mutual assent between defendant and plaintiffs regarding what consideration was being proffered to bind defendant to its irrevocable offer. Absent mutual assent to the material terms of the option, such as consideration, there simply is no contract. *Clark*, 309 Mich App at 394. Lastly, even if Article 31 could be read to include a recitation of consideration for the option, it still would fail because, for the reasons stated above, the consideration identified by plaintiffs was already due under the proposed lease agreement and, therefore, was not independent consideration for the option. *Sulzberger*, 235 Mich at 257.

Because there was no consideration provided for the option, there was no contract requiring defendant to keep the offer open for 30 days. In light of plaintiffs' reliance on a binding option in Count II of their complaint, the trial court properly granted summary disposition in favor of defendant as to that count.

## IV. ACCEPTANCE OF OFFER

Plaintiffs contend that the trial court either should have enforced all of Article 31 or none of it, and if it decided to enforce none of Article 31, then plaintiffs accepted defendant's offer under the common law before defendant revoked the offer. We disagree.

## A. APPLICABLE LAW

"[A] contract is an agreement between parties for the doing or not doing of some particular thing and derives its binding force from the meeting of the minds of the parties . . . ." *Mardigian Estate*, 312 Mich App at 562 (quotation marks and citation omitted). "A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *AFT Mich*, 497 Mich at 235. "Before a contract can be completed, there must be an offer and acceptance." *Clark*, 309 Mich App at 394 (quotation marks and citation omitted).

This issue specifically focuses on an offer and the required form of acceptance, if any. "An offer is defined as the manifestation of willingness to enter into a bargain, so made as to justify

another person in understanding that his assent to that bargain is invited and will conclude it." *Kloian*, 273 Mich App at 453. Generally, "[a]n acceptance sufficient to create a contract arises where the individual to whom an offer is extended manifests an intent to be bound by the offer, and all legal consequences flowing from the offer, through voluntarily undertaking some unequivocal act sufficient for that purpose." *Id*. (quotation marks and citation omitted). " 'Unless an acceptance is unambiguous and in strict conformance with the offer, no contract is formed.' " *Clark*, 309 Mich App at 394, quoting *Kloian*, 273 Mich App at 452. Stated differently, "[i]f an offer does not require a specific form of acceptance, acceptance may be implied by the offeree's conduct." *Pakideh v Franklin Commercial Mtg Group, Inc*, 213 Mich App 636, 640; 540 NW2d 777 (1995), citing *Ludowici-Celadon Co v McKinley*, 307 Mich 149, 153; 11 NW2d 839 (1943).

## B. ANALYSIS

The trial court properly granted summary disposition in favor of defendant as related to plaintiffs' claim that they could accept the offer in any manner permissible under the common law.

Article 31 is clear—the entire proposed lease agreement is to be considered an offer by defendant to plaintiffs. And, indeed, such conforms with the law, because the proposed lease agreement showed defendant's "willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Kloian*, 273 Mich App at 453. Thus, to form the lease contract, plaintiffs had to accept the offer. *Clark*, 309 Mich App at 394. Generally, acceptance of an offer can be implied from the actions of the offeree—here, plaintiffs. *Pakideh*, 213 Mich App at 640. However, when an offer contains a statement of how it must be accepted, acceptances can only occur "in strict conformance with the offer . . . ." *Clark*, 309 Mich App at 394 (quotation marks and citation omitted).

This case falls under the exception to the general rule because Article 31 expressly provides how defendant's offer must be accepted. Pertinently, Article 31 of the proposed lease agreement states: "[A]cceptance shall be evidenced only by [plaintiffs] signing and delivering this Lease to [defendant]." The offer also lists certain actions which will *not* qualify as acceptance of the offer, stating that plaintiffs "may, at [plaintiffs'] option (and shall, if required by applicable Law), deposit any security deposit and Rent, and proceed with any plans, specifications, alterations or improvements, and permit [defendant] to enter the Premises, but such acts shall not be deemed an acceptance of [defendant]'s offer to enter this Lease . . . ." Briefly, then, plaintiffs could only accept defendant's offer by signing the proposed lease agreement and delivering it to defendant. The parties do not dispute that plaintiffs signed the proposed lease agreement on or about March 3, 2020, but did not deliver it to defendant until March 20, 2020, at 11:34 a.m. The record also is undisputed, however, that defendant sent an e-mail to plaintiffs revoking the offer on March 20, 2020, at 9:30 a.m., two hours before the attempted acceptance.

As this Court has clearly stated, " '[u]nless an acceptance is unambiguous *and in strict conformance with the offer*, no contract is formed.' " *Clark*, 309 Mich App at 394, quoting *Kloian*, 273 Mich App at 452 (emphasis added). Therefore, any signatures plaintiffs provided or actions they took did not amount to an acceptance, because such were not in strict conformance with defendant's offer. *Clark*, 309 Mich App at 394. Further, as noted above, Article 31 did not constitute a binding option, which meant defendant's offer was not irrevocable. Instead, defendant made a simple offer, which "may be revoked for any reason or for no reason by the offeror at any

time prior to its acceptance by the offeree." *Burgess*, 45 Mich App at 186, citing *Weiden v Woodruff*, 38 Mich 130, 131-132 (1878). Here, defendant revoked its offer on March 20, 2020, at 9:30 a.m. Plaintiffs sent an e-mail purporting to accept the offer in strict conformance with the language of the offer two hours later. This was too late because the offer had already been withdrawn. *Burgess*, 45 Mich App at 186-187, citing *Weiden*, 38 Mich at 131-132. Absent a valid acceptance under the specific terms of the offer before such is revoked, there simply is no contract. *Clark*, 309 Mich App at 394. Such is the case here.

In an attempt to escape this conclusion, plaintiffs encourage this Court to apply caselaw related to severing terms of a contract. Specifically, plaintiffs argue that because defendant's promise to keep the offer open for 30 days is not being enforced, then neither should the sign-and-deliver requirement for acceptance. Plaintiffs believe that the trial court improperly severed Article 31 by enforcing one part of it but not the other. If the trial court had not severed Article 31, then plaintiffs' general acceptance would have sufficed to form a contract. For this argument, plaintiffs rely on *Samuel D Begola Servs, Inc v Wild Brothers*, 210 Mich App 636, 641; 534 NW2d 217 (1995); and *Stokes v Millen Roofing Co*, 466 Mich 660, 666; 649 NW2d 371 (2002). However, these cases merely present general law on the issue of severance, stating, "[a] general rule of contract law is that the failure of a distinct part of a contract does not void valid, severable provisions." *Wild Brothers*, 210 Mich App at 641. In deciding when one term of a contract is severable from the other, "the primary consideration is the intention of the parties." *Id*. Our Supreme Court stated that an illegal term of a contract is severable from the legal terms when "the illegal provision [is] not [] central to the parties' agreement." *Stokes*, 466 Mich at 666. When the terms are dependent on one another, as opposed to independent from each other, severance is not permitted. *Id*.

Plaintiffs' arguments in this regard fail for one simple reason—the law regarding severance of terms relates to an actual contract otherwise formed. *Id*. (considering whether "the contract" can be bifurcated); *Wild Brothers*, 210 Mich App at 641 ("A general rule of contract law is that the failure of a distinct *part of a contract* does not void valid, severable provisions.") (emphasis added). Stated differently, plaintiffs have not identified any caselaw suggesting that the foregoing caselaw applies to offers. In the present case, there is no contract. Instead, there is an offer by defendant, which detailed the manner by which acceptance must occur. The offer also contained an unenforceable promise by defendant to keep the offer open for 30 days. By enforcing the offer's stated form of acceptance, the trial court was not striking a term from a contract. Instead, the trial court was analyzing whether a contract was ever formed. In other words, the trial court simply considered whether plaintiffs accepted the terms of the contract in the manner stated in the offer. A severance argument presumes there is an illegal portion of an otherwise binding contract that either will invalidate the entire contract or strike down only the illegal provision. Such is not at issue in the present case, which simply concerns whether plaintiffs ever accepted an offer from defendant, and whether defendant was required to keep the offer open for a given time period. Because there was never a contract in this case, plaintiffs' severance argument is unavailing. *Stokes*, 466 Mich at 666; *Wild Brothers*, 210 Mich App at 641.

Briefly, then, because plaintiffs did not accept defendant's offer in the proper manner before defendant revoked it, there was no contract formed between plaintiffs and defendant. *Clark*, 309 Mich App at 394; *Burgess*, 45 Mich App at 186-187.

## V. PROMISSORY ESTOPPEL

Plaintiffs contend that the doctrine of promissory estoppel required the trial court to enforce defendant's promise to keep its offer open for 30 days. We disagree.

## A. APPLICABLE LAW

The elements of a promissory estoppel claim are

(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, and (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided. [*Cove Creek Condo Ass'n v Vistal Land & Home Dev, LLC*, 330 Mich App 679, 713; 950 NW2d 502 (2019) (quotation marks and citation omitted).]

"In determining whether a requisite promise existed, we are to objectively examine the words and actions surrounding the transaction in question as well as the nature of the relationship between the parties and the circumstances surrounding their actions." *Novak v Nationwide Mut Ins Co*, 235 Mich App 675, 687; 599 NW2d 546 (1999). "The promise must be definite and clear, and the reliance on it must be reasonable." *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 41; 761 NW2d 151 (2008).

## B. ANALYSIS

The trial court properly granted summary disposition of plaintiffs' promissory estoppel claim in favor of defendant.

Initially, the parties disagree if promissory estoppel can substitute for consideration in an option contract. Plaintiffs note that "[p]romissory estoppel, in contrast with equitable estoppel, does not establish waiver but, rather, substitutes for consideration in a case where there are no mutual promises, enabling the promisee to assert a separate claim against the promisor, independent of any other claim he may have against the promisor . . . ." *Huhtala v Travelers Ins Co*, 401 Mich 118, 133; 257 NW2d 640 (1977). Therefore, the verbose dispute between the parties about whether promissory estoppel may apply to a contract lacking consideration in the form of mutual promises can be easily disposed. Plaintiffs are correct that there can be situations when a promise unenforceable under contract law because of a lack of consideration can be enforced under the doctrine of promissory estoppel. *Id*. This, however, does not mean plaintiffs are correct in their claim that the trial court erred by summarily disposing of the promissory estoppel count of their complaint.

There seems to be little dispute regarding the first element of a promissory estoppel claim—defendant signed a document containing the following line: "[Defendant] agrees that its execution of this Lease constitutes a firm offer to enter the same which may not be withdrawn for a period of thirty (30) days after delivery to [plaintiffs] . . . ." Consequently, defendant made a "promise" not to withdraw the offer for 30 days. *Cove Creek Condo*, 330 Mich App at 713. Moreover, there was at least a question of fact regarding whether defendant should have known that plaintiffs would have relied on that promise to their detriment. After all, the proposed lease

agreement specifically states that plaintiffs might take actions particularly mentioned in the contract before actually accepting the offer. A reasonable juror could conclude that defendant should have expected plaintiffs to rely on defendant's promise to keep the offer open by beginning demolition of Suite 1700, thereby fulfilling that part of the second element of a promissory estoppel claim. *Id.*

Plaintiffs' argument, however, falls apart because plaintiffs' reliance on the unenforceable promise was unreasonable. *Zaremba Equip*, 280 Mich App at 41. The trial court impliedly decided such when summarily disposing of the promissory estoppel claim. Specifically, the trial court stated: "The circumstances in this case dispel reliance where the Plaintiffs never provided separate consideration for the offer . . . ." Plaintiffs argue that this shows that the trial court did not understand their promissory estoppel argument, as such a claim does not require proof of consideration. While the trial court's reasoning could be clearer, it seems the trial court was stating that plaintiffs' alleged reliance was unreasonable when it depended on a promise they must know is unenforceable because of their failure to provide consideration for it.

As this Court has explained, "[w]e are to exercise caution in evaluating an estoppel claim and should apply the doctrine only where the facts are unquestionable and the wrong to be prevented undoubted." *Novak*, 235 Mich App at 687. Such is not the case here. The law in Michigan is clear, and has been for at least 130 years—an option, "if based on valid consideration, are contracts which may be specifically enforced." *Burgess*, 45 Mich App at 185, citing *Gustin*, 94 Mich at 505. As our Supreme Court differentiated in the *Gustin* opinion:

> Many, if not most, of the adjudicated cases, upon what are termed "options" for the purchase of land, seem to have arisen upon unilateral contracts, which only become binding by acceptance or performance of their conditions before the offer is withdrawn. But this case is not such, for the rent was a sufficient consideration for the offer, which was therefore irrevocable. [*Gustin*, 94 Mich at 504-505.]

Thus, a case 130 years old refers to the requirement of consideration to make an option binding as having been decided more than once. *Id.* Plaintiffs, a conglomerate that owns an office building and leases space in Oakland County, and was represented by counsel, would have this Court determine it was reasonable for them to rely on a promise that 130 years' worth of Michigan caselaw states is unenforceable as a matter of law. The trial court refused to do so because the record "dispelled" such a determination. Concluding otherwise would be to state that a reasonable fact-finder could determine the abjectly unreasonable legal position of plaintiffs could be considered reasonable. *Zaremba Equip*, 280 Mich App at 41. Because it was unreasonable for plaintiffs to rely on defendant's unenforceable promise to keep an offer open for 30 days without being paid consideration for such option, their promissory estoppel claim failed. *Cove Creek Condo*, 330 Mich App at 713; *Zaremba Equip*, 280 Mich App at 41.[2]

---

[2] We also question whether the last requirement of a promissory estoppel claim—allowing for application of it only when injustice would result otherwise—could be proven in this case. *Cove Creek Condo*, 330 Mich App at 713. Promissory estoppel is an equitable remedy, *Crown*

# VI. MOOTNESS

*Technology Park v D&N Bank, FSB*, 242 Mich App 538, 548 n 4; 619 NW2d 66 (2000), to which the unclean-hands doctrine is a defense, *New Prods Corp v Harbor Shores BHBT Land Dev, LLC*, 331 Mich App 614, 627; 953 NW2d 476 (2019). Further, we are permitted to raise an unclean-hands argument sua sponte on appeal. *Stachnik v Winkel*, 394 Mich 375, 382; 230 NW2d 529 (1975). Here, it arguably would be inequitable to reward plaintiffs with enforcement of the proposed lease agreement when they came to the trial court with unclean hands seeking the equitable relief of promissory estoppel. Plaintiffs' inequitable behavior is plain in their briefing below. Specifically, plaintiffs acknowledged Article 31 was specifically written to benefit them in a manner inconsistent with equity. Plaintiffs stated they intended Article 31 to allow plaintiffs to act in a manner that would bind defendant to the lease agreement, while simultaneously barring defendant from enforcing the same agreement.

Article 31 states that plaintiffs' acceptance could only be "evidenced by" plaintiffs signing and delivering the proposed lease agreement to defendant. The same article also provides plaintiffs can perform actions required of them under the proposed lease agreement without those actions being considered an acceptance. Yet, because Article 31 specifically stated acceptance could only be "evidenced by" signing and delivering the proposed lease agreement, plaintiffs claimed that they could accept the offer by signing the proposed lease agreement, not delivering it, and taking actions in conformance with the proposed lease agreement. While this would be acceptance by plaintiffs from the perspective of plaintiffs, they did not want defendant to be able to prove acceptance when such actions were occurring. Instead, they sought to ensure defendant could only prove acceptance by having a copy of the proposed lease agreement signed by plaintiffs. Plaintiffs seemingly had no intention of delivering the executed document until they were fully ensured the proposed lease agreement was fully beneficial to them. Thus, plaintiffs specifically planned there to be a time period when defendant was bound to the lease while they were not. Simply put, the facts suggest that plaintiffs wrote Article 31 in a manner they believed would allow them to secretly bind defendant to the proposed lease agreement, while plaintiffs were free to walk away from the offer if the deal became less desirable so long as they had not delivered the signed document to defendant.

Plaintiffs insist it would be an injustice and inequitable for the trial court and this Court not to enforce defendant's promise to keep its offer open for 30 days. By admitting they wrote Article 31 in a manner to unfairly benefit them, it instead would be an injustice to defendant to enforce the promise at issue. *Cove Creek Condo*, 330 Mich App at 713. Plaintiffs sought to create a situation where defendant was at their mercy with respect to when and whether a contract had been officially formed; such behavior arguably was inequitable and done in bad faith. *New Prods Corp*, 331 Mich App at 627. "Any willful act that transgresses equitable standards of conduct is sufficient to allow a court to deny a party equitable relief." *Id*. Consequently, we could alternatively affirm the trial court's decision on the basis of the unclean-hands doctrine, *id*., or by determining summary disposition was warranted because there was no genuine issue of material fact that injustice would not result from enforcement of defendant's promise, *Cove Creek Condo*, 330 Mich App at 713.

Plaintiffs contend that the trial court erred by determining that their arguments with respect to remedies were moot. Plaintiffs' sole ground for this claim is that the trial court erred by determining that defendant was not liable to plaintiffs. As is clear from the analysis above, we disagree. "An issue is moot when a subsequent event makes it impossible for this Court to grant relief." *Gleason v Kincaid*, 323 Mich App 308, 314; 917 NW2d 685 (2018). As discussed, the trial court properly determined that defendant was not liable to plaintiffs under either contract law or promissory estoppel. Thus, plaintiffs are not entitled to any remedies. Because defendant had no liability, the question of what remedies plaintiffs would be entitled to had they proven their case "does not rest upon existing facts or rights and presents nothing but abstract questions of law . . . ." *Id*. at 314-315. Consequently, plaintiffs' argument regarding mootness lacks merit because it fully relies on plaintiffs prevailing on the merits, which did not occur. Thus, summary disposition of plaintiffs' remedies arguments on the grounds of mootness was proper.

## VII. CONCLUSION

Affirmed. Having prevailed on appeal, defendant may tax costs under MCR 7.219.

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ Christopher P. Yates